# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1468

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States District |
| | * | Court for the Northern District of Iowa. |
| Terrence Eugene Goodson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 21, 1998

Filed:  January 11, 1999

_____

Before WOLLMAN, ROSS and BEAM, Circuit Judges.

_____

ROSS, Circuit Judge.

Terrence Eugene Goodson appeals from a judgment of the district court[1] following his conviction for possession with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841 (a)(1).  We affirm.

_____

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

Around 1:00 A.M. on March 11, 1996, Waterloo, Iowa police officer Mark Meyer applied for a warrant to search Goodson's home for crack cocaine. In his application, Meyer stated he had known Goodson for a number of years and had heard from concerned citizens and confidential informants that Goodson was involved with trafficking crack cocaine. In particular, Meyer stated that a reliable informant had advised him that Goodson lived with LaTanya Graves at 607 Donald Street, in recent days Goodson was selling crack cocaine from that address, and on March 10 there were several vehicles parked for short periods of time in front of the house. Meyer indicated that utilities for the address were listed in Graves' name and several vehicles, including a red Mercedes Benz, were registered to her at that address. Meyer also stated that another informant had observed Goodson selling crack cocaine from the red Mercedes and a third informant had purchased crack cocaine from a woman, who obtained it from Goodson. In an attachment, Meyer indicated that he had known one of the informants for seven years and the informant had supplied reliable information leading to over 40 arrests, seizure of contraband and various criminal charges.

Shortly after a state court judge issued the warrant, at 1:44 a.m. state law enforcement officers arrived at Goodson's home. They knocked twice, announced their presence, and waited twenty seconds before forcibly entering the house. Once inside, Meyer read Goodson his Miranda rights and asked him if there were any drugs in the house. Goodson led Meyer to a closet where Goodson retrieved a shoe box containing a large amount of crack cocaine. Officers also seized other items, including a briefcase containing small pieces of crack cocaine. During an interview at the police station, Goodson admitted that the crack cocaine belonged to him and also stated that he had sold an additional ten ounces of crack cocaine.

After indictment, Goodson filed a motion to suppress, asserting the warrant was unsupported by probable cause and the nighttime, forcible entry was illegal. He also requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978). The court denied his request for a Franks hearing, but held an evidentiary hearing on the suppression motion. After the court denied the motion, Goodson filed a renewed motion to suppress and renewed request for a Franks hearing. The court again denied the motion and the request and the case proceeded to trial.

At trial, among other things, the government presented Meyer's testimony, the testimony of a chemist, and introduced the seized drugs. Before trial, the government had informed Goodson that other items seized during the search, including the shoe box, a cellular telephone, an electronic memo device, and an address book, were missing. Dennis Heiser, a police property technician, testified that after he received an order from the county clerk advising him that the items were no longer needed for pending proceedings, pursuant to routine, he destroyed items with no monetary value and offered items with value for sale. Heiser, however, admitted, he had failed to read an attachment to the order informing him of the federal proceedings and claimed that in his five years with the police department this was the only time he had accidentally destroyed evidence. Meyer had also testified that he could not recall any other time that evidence had been mistakenly destroyed. The court instructed the jury that if it found that the lost or destroyed evidence was material, it could infer the evidence would have been unfavorable to the government. The jury returned a verdict of guilty.

After the verdict, Goodson's counsel learned from an attorney that Heiser had destroyed evidence in other cases. Goodson then filed a post-trial motion for judgment

-3-

of acquittal or, in the alternative, for a new trial, asserting due process violations. The prosecutor filed a statement indicating that after closing arguments Meyer had informed him that Heiser might have accidentally destroyed evidence in two other federal cases. The prosecutor further stated that after investigation he told the defense counsel in the other cases about the missing evidence, but did not inform Goodson's counsel. Heiser filed a statement indicating that because he failed to read attachments in other orders, he had mistakenly destroyed evidence in the two cases, but at the time of his testimony did not know of his mistakes. After a hearing, the court rejected Goodson's due process claims, finding that the prosecutor was unaware at the time of Heiser's testimony that he had destroyed evidence in other cases, that Heiser had not acted in bad faith, and that the missing evidence in Goodson's case was not materially exculpatory. Although the court denied Goodson's motion for judgment of acquittal, in the interests of justice, it granted his motion for a new trial.

Instead of facing a second trial, Goodson entered into a conditional guilty plea, reserving the right to appeal the denials of his motions to suppress and for judgment of acquittal. At the change of plea hearing, Goodson admitted that he possessed 66 grams of cocaine base with the intent to distribute and was thus subject to the ten-year mandatory minimum sentence of 21 U.S.C. § 841(b)(1). However, he disputed that the cocaine base was crack cocaine within the meaning of U.S.S.G. § 2D1.1(c).

At the sentencing hearing, the government introduced a police laboratory report describing the seized drugs as cream-colored chunks. In addition, Meyer testified that the seized drugs were hard and gravel-like and, based on his experience, looked like crack cocaine. Meyer also testified that Goodson referred to the drugs as crack cocaine

and had admitted to distributing an additional ten ounces (280 grams) of crack cocaine. At the conclusion of the hearing, the court, after looking at the drugs and crediting Meyer's testimony, found that Goodson had possessed with the intent to distribute 346 grams of crack cocaine. The court refused Goodson's motion for a downward departure and sentenced him to 135 months.

On appeal, Goodson argues that the district court erred in denying his request for a <u>Franks</u> hearing and his suppression motions. In support of both arguments, Goodson notes that Meyer failed to state how he knew Goodson, to specifically identify which informant he was describing in the attachment, to detail the reliability of the two other informants, and did not confirm the short-term traffic in front of the house. Because Goodson did not make a "substantial preliminary showing" that Meyer included "a false or reckless statement or omission" and "that the alleged false statement or omission was necessary to the probable cause determination[,]" the court did not err in refusing his request for a <u>Franks</u> hearing. <u>United States v. Milton</u>, 153 F.3d 891, 896 (8th Cir. 1998) (internal quotation omitted).

Indeed, as the court observed, Goodson's <u>Franks</u> challenge is essentially a probable cause challenge, which is without merit. Search warrant "[a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." <u>Walden v. Carmack</u>, 156 F.3d 861, 870 (8th Cir. 1998). Reading Meyer's application in such a fashion, we agree with the district court that it is clear that the attachment detailing the informant's reliability refers to the "first and predominant" informant who provided the information that Goodson was selling crack cocaine from 607 Donald Street. We have repeatedly held that " '[t]he statements of a reliable

confidential informant are themselves sufficient to support probable cause for a search warrant' " and that " '[t]he reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information.' " United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998) (quoting United States v. Wright, 145 F.3d 972, 974-75 (8th Cir.), cert. denied, 119 S. Ct. 272 (1998)). Thus, even if Meyer had excluded the information from the two other informants and about the short-term traffic or included information that he had never arrested Goodson, his application would have supported probable cause. We also note that even though the other two informants may not have had a track record of reliability, their tips corroborated the first informant's tip and to some extent each other's tips, which also "render[s] their information enough to support a finding of probable cause." United States v. Fulgham, 143 F.3d 399, 401 (8th Cir.1998).

Goodson also challenges the manner of execution of the warrant. Although he concedes that Iowa law permits nighttime execution of search warrants, Iowa Code Ann. § 808.5, he contends that the search violated Fed. R. Crim. P. 41(c)(1), which provides as a general rule for daytime execution of warrants. His argument is without merit. "When federal officers are a significant part of a search conducted pursuant to a state warrant," federal standards may apply. United States v. Murphy, 69 F.3d 237, 242 (8th Cir. 1995), cert. denied, 516 U.S. 1153 (1996). However, "[n]othing in the record indicates that federal officers participated in the initial entry and search of [Goodson's] residence." Id. Indeed, there was no federal involvement in the search. A state court judge issued the warrant based on a state officer's application and state law enforcement officials executed the warrant. Although Meyer called an Assistant United States Attorney after the discovery of a large amount of crack cocaine, that act

did not subject the search to federal standards. See id. Thus, " '[t]he proper standard in this case is whether the state officials complied with . . . the Fourth Amendment . . ..' " Id. (quoting United States v. Moore, 956 F.2d 843, 848 (8th Cir. 1992)).

We also reject Goodson's argument that the forcible entry into his house violated the common-law knock-and-announce requirement, which is " 'part of the reasonableness inquiry under the Fourth Amendment.' " Id. (quoting Wilson v. Arkansas, 514 U.S. 927, 929 (1995)). "The determination of whether an officer was justified in forcing entry after announcing his presence and purpose does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant." United States v. Lucht, 18 F.3d 541, 549 (8th Cir.), cert. denied, 513 U.S. 949 (1994).[2] "The need to force entry may result from danger to the safety of the entering officers or from the imminent destruction of evidence." Id. In the circumstances of this case, the forced entry was reasonable. See id. (forced entries reasonable where officers waited 6 - 8 seconds and 5 - 10 seconds). Meyer testified that he believed waiting twenty seconds after knocking loudly and announcing the officers' presence and purpose was reasonable, considering the size of the house, which was a one-story ranch house, and the potential that the residents could flush crack cocaine down a toilet. Meyer also testified that because Goodson had a record for assault with a deadly weapon, Meyer feared waiting any longer could jeopardize the officers' safety.

---

[2]Lucht concerned the application of the federal knock-and-announce statute, 18 U.S.C. § 3109, which we may look to for guidance since it codifies the common-law. See United States v. Ramirez, 118 S. Ct. 992, 997 (1998).

Goodson next argues that the district court erred in denying his motion for judgment of acquittal. Because Goodson offers no reason to undermine the court's findings that Heiser did not act in bad faith or that the missing evidence was not materially exculpatory,[3] he cannot establish a violation under Brady v. Maryland, 373 U.S. 83 (1963), or Arizona v. Youngblood, 488 U.S. 51 (1988). See United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998) (no Brady violation where evidence had "little or no exculpatory value"); United States v. Weise, 89 F.3d 502, 504 (8th Cir. 1996) ("failure to preserve potentially useful evidence does not violate [Youngblood] unless the defendant can show the police acted in bad faith").

We also reject Goodson's argument that an acquittal is warranted because the prosecution knowingly presented false testimony to the jury. It is true that "[t]he prosecution may not use or solicit false evidence, or allow it to go uncorrected." United States v. Martin, 59 F.3d 767, 770 (8th Cir.1995) (citing Giglio v. United States, 405 U.S. 150, 154 (1972)). There is no evidence suggesting that at the time of Meyer's or Heiser's testimony that they or the prosecutor knew that evidence had been destroyed in other cases. Even if we assume that Heiser and Meyer testified falsely and impute their knowledge to the prosecutor, Goodson cannot prevail on a claim of prosecutorial use of false testimony because "there is [no] reasonable likelihood that

---

[3]Goodson argues that if the cell phone, address book, or memo device had been available, perhaps he could have shown that they contained telephone numbers or addresses of family and friends, not drug dealers. He also argues that if he had the shoe box, he might have shown it did not have his fingerprints on it, which, he claims, would have impeached Meyer's testimony. We agree with the district court that the unavailable evidence was only potentially exculpatory and, in any event, would be minimally, if at all, useful.

the [false] testimony could have affected the jury's judgment." Id. (internal quotation omitted). In any event, even if he could make such showing, in the circumstances of this case, all Goodson would be entitled to receive is what the district court, exercising its supervisory authority, ordered -- a new trial. See Giglio, 405 U.S. at 155.

Goodson also challenges his sentence. Contrary to his argument, the district court did not err in finding that the cocaine base was crack cocaine within the meaning of the Sentencing Guidelines. Section 2D1.1(c), note D, provides that " 'cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually . . . appearing in a lumpy, rocklike form." Although under the guideline "forms of cocaine base other than crack (e.g., coca paste . . .) will be treated as cocaine," id., "there was no evidence here that [Goodson] was distributing coca paste or other exotic forms of cocaine base." United States v. Brown, 156 F.3d 813, 816 (8th Cir. 1998). Indeed, the only evidence was that the seized drugs were crack cocaine. Meyer described the drugs as hard, rocklike substances and testified that Goodson referred to the drugs as crack cocaine. See United States v. Stewart, 122 F.3d 625, 627 (8th Cir. 1997) (upholding crack finding based on drugs' rocklike appearance).[4] Nor was the district court's finding that Goodson was responsible for 384 grams of crack cocaine clearly erroneous. The court credited Meyer's testimony concerning quantity, and we defer to that finding.

---

[4]Because the district court did not err in sentencing Goodson to 135 months under the guidelines, we do not address his argument concerning the definition of cocaine base under 21 U.S.C. § 841(b)(1), which provides a mandatory minimum ten-year sentence for possession of more than 50 grams of cocaine base.

Goodson also argues that the district court erred in refusing his request for a downward departure based on alleged prosecutorial misconduct.  Although the court was uncertain whether it had the authority to depart downward in such a circumstance, it assumed it did, but refused to do so.  Even if the court had the power to depart, which we doubt, see United States v. Janis, 69 F.3d 914, 915 (8th Cir. 1995) (per curiam) ("district court cannot depart where the only purpose of the departure is to deter government misconduct" which "had no relationship to [defendant's] culpability"), we will not review its discretionary refusal to depart downward.  Id.

Accordingly, we affirm the judgment of the district court.[5]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Goodson raises other arguments, which were not properly preserved for appeal or inappropriately raised in a so-called Anders brief.  We nonetheless have reviewed them and find they are without merit.