**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 10 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES of AMERICA,

    Plaintiff - Appellee,

v.

DEMETRIUS L. JENKINS,

    Defendant - Appellant.

No. 98-3017

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 97-CR-10047-01-JTM)**

---

Steven K. Gradert, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender with him on the brief), Wichita, Kansas, for Defendant-Appellant.

Leon J. Patton, Assistant United States Attorney, Kansas City, Kansas (Jackie N. Williams, United States Attorney, and D. Blair Watson, Assistant United States Attorney, on the brief, Wichita, Kansas), for Plaintiff-Appellee.

---

Before **BRORBY**, **McKAY**, and **EBEL**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Defendant Demetrius L. Jenkins directly appeals his convictions of possession with intent to distribute cocaine base and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Defendant claims that the district court erroneously denied his pretrial motion to suppress evidence obtained in connection with the execution of a search warrant. He also argues that the evidence presented at trial was insufficient to support his convictions of possession with intent to distribute cocaine base and marijuana.

I.

On March 14, 1997, the Wichita Police Department executed a search warrant on Codefendant Monika K. Payne's residence, where Defendant regularly spent the night. The record indicates that, before entering the residence, officers knocked loudly on the outside screen door and announced that they were from the Wichita Police Department and had a search warrant. Officers waited approximately ten to fifteen seconds before forcing open the locked screen door. After opening the screen door, one or two more officers again announced their identity as police officers and their possession of a search warrant. Two to three seconds later the officers forced open the interior door with a battering ram, and, once they gained entry to the residence, they again announced their identity and authority. The total time between the officers' initial knock on the screen door

and their application of force to the interior door was about fourteen to twenty seconds.

After entering the residence, officers saw Ms. Payne and took her into custody. Officers then located Defendant and Malaycia Payne, who is the four-year-old daughter of Defendant and Ms. Payne, in the southwest bedroom of the residence. Malaycia was lying on a small bed or mattress on the floor, and officers testified that they found a loaded nine-millimeter gun about two to three feet from her head. Underneath the bed in which Defendant was lying when he was found, officers located a brown case which contained a shotgun. In a night stand next to the bed, officers found marijuana, approximately $3,000 in cash which included a marked twenty-dollar bill used by a police informant to purchase cocaine base from Defendant, and two clear bags containing crack cocaine. Officers also discovered marijuana and roach clips in a cigar box, plastic sandwich bags, marijuana in a laundry basket, and $203 in cash and Ms. Payne's driver's license in a pocket of a pair of women's jeans. In addition, officers found a plastic bag containing cocaine base and marijuana cigarettes on top of a dresser, two small bags of marijuana on top of a large glass fish tank, and another plastic bag containing butts of marijuana cigarettes in a closet in the bedroom.

In searching the remainder of the residence, officers discovered a partially-smoked marijuana cigarette in an ashtray in the bathroom, a small plastic bag

containing white powder residue on a window sill in the kitchen, and another plastic bag with white residue in a kitchen cabinet. They also found a plastic bag containing crack cocaine in a hole covered with a piece of particle board in the middle of the backyard of the residence. There is a four-foot fence surrounding the backyard of the residence, and a fraternity house is located directly behind the fence.

Defendant was indicted on March 19, 1997, with one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On May 21, 1997, Defendant was charged in a superseding indictment with the following offenses: possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and two counts of possession of a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

Defendant filed a motion to suppress, alleging that the search warrant was invalid and that the officers "failed to comply with the requirements of knocking and announcing their purpose prior to entry into the residence by force." R., Vol. I, Doc. 21. The district court denied the motion after an evidentiary hearing,

finding that the warrant was validly issued.[1]  The court also determined that the execution of the warrant was proper, explaining that although it had "some concerns about [ten] seconds being an adequate period of time to wait," the amount of time the officers waited before breaking open the door was not unreasonable under the circumstances.  Id., Vol. II at 75.

After a jury trial, Defendant was convicted of one count of possession with intent to distribute cocaine base and one count of possession with intent to distribute marijuana.  He received consecutive sentences of 210 months' and sixty months' incarceration, and he timely filed a notice of appeal.

On appeal, Defendant argues that the district court should have granted his motion to suppress the evidence seized from Ms. Payne's residence and used by the Government to convict him.  In support of this argument, Defendant contends that the alleged Wichita Police Department policy to wait only ten seconds after knocking and announcing before forcibly entering a residence violates the "knock and announce" statute, 18 U.S.C. § 3109, as does the police officers' execution of the warrant in this case.  Defendant also claims that the evidence was insufficient to support his convictions.

---

[1]The court determined that Defendant had standing to challenge the search because "he had a reasonable expectation of privacy in the residence." R., Vol. I, Doc. 74 at 2; see also id. Vol. II at 74 (explaining the basis on which the court found that Defendant had standing to challenge the search).

II.

We first address Defendant's arguments regarding the district court's denial of his motion to suppress. "On appeal from the denial of a motion to suppress, we review the evidence in the light most favorable to the government and we review the district court's factual findings only for clear error." United States v. Lambert, 46 F.3d 1064, 1067 (10th Cir. 1995). Because the district court made no specific findings in support of its ruling that the officers waited a reasonable amount of time after knocking and announcing, "we must uphold the ruling 'if there is any reasonable view of the evidence to support it.'" United States v. Donnes, 947 F.2d 1430, 1432 (10th Cir. 1991) (internal quotation marks and citation omitted). "[T]he reasonableness of a search and seizure under the Fourth Amendment is a question of law which we review de novo." United States v. Myers, 106 F.3d 936, 939 (10th Cir.), cert. denied, 520 U.S. 1270 (1997).

Because the officers in this case were state officers executing a state warrant, "they were not governed in their actions by [18 U.S.C. § 3109] but rather by the federal constitution, specifically the Fourth Amendment."[2] United States

---

[2]The Government states in its brief that Defendant did not raise the argument that the execution of the search warrant violated 18 U.S.C. § 3109 in his motion to suppress. However, Defendant did raise this general argument in his motion to suppress by asserting that the "officers acted unlawfully in . . . the execution of the warrant, in that they failed to comply with the requirements of knocking and announcing their purpose prior to entry into the residence by force." R., Vol. I, Doc. 21 at 2.

v. McCloud, 127 F.3d 1284, 1286 n.1 (10th Cir. 1997); see also United States v. Moland, 996 F.2d 259, 261 (10th Cir. 1993) (stating that section 3109 does not apply to state investigations by state officers), cert. denied, 510 U.S. 1057 (1994). Although section 3109 does not govern this case, the applicable standards under the statute and the Constitution are similar. See McCloud, 127 F.2d at 1286 n.1. Thus, we may "use § 3109 as a guide in conducting the 'reasonableness' inquiry dictated by the Fourth Amendment." United States v. Moore, 91 F.3d 96, 98 (10th Cir. 1996). The statute provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109.

While section 3109 requires officers to provide notice of their authority and purpose before forced entry, the Supreme Court has held that the common-law knock-and-announce principle "is an element of the reasonableness inquiry under the Fourth Amendment." Wilson v. Arkansas, 514 U.S. 927, 934 (1995). Although certain circumstances may justify entry without knocking and announcing, see id., "[t]he Fourth Amendment . . . includes a general presumption that police officers executing a search warrant for a residence must announce their presence and authority before entering." Moore, 91 F.3d at 98. "If the

occupants do not admit the officers within a reasonable period of time [after they have knocked and announced their presence and purpose], the officers may be deemed to be constructively refused admittance, and they may then enter by force." Id.

This court has not established a clear-cut standard by which to determine the amount of time officers must wait after knocking and announcing before forcibly entering a residence. Under certain circumstances, this court has held that waiting approximately ten seconds is reasonable. See, e.g., Myers, 106 F.3d at 940 (upholding district court's conclusion that agents who knocked loudly and waited ten seconds before entering complied with the Fourth Amendment); United States v. Knapp, 1 F.3d 1026, 1031 (10th Cir. 1993) (affirming district court's determination that officers did not violate section 3109 because they waited ten to twelve seconds after knocking and announcing). By contrast, this court has found three seconds to be an unreasonably short waiting period. See Moore, 91 F.3d at 98 (affirming trial court's conclusion that entering three seconds after making announcement was "virtually instantaneous" and therefore "precluded any claim that the officers were precluded admittance" (internal quotation marks and citation omitted)).

Although the prospect of utilizing these cases as guideposts is appealing, a bright-line rule for determining how much time is enough is inappropriate. See

United States v. Goodson, 165 F.3d 610, 614 (8th Cir. 1999) ("'The determination of whether an officer was justified in forcing entry after announcing his presence and purpose does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant.'" (citation omitted)); United States v. Spikes, 158 F.3d 913, 926 (6th Cir. 1998), cert. denied, __ U.S. __, 118 S. Ct. 1854 (1999) (declining to create bright-line rule regarding amount of time officers must wait after knocking and announcing); United States v. Jones, 133 F.3d 358, 361 (5th Cir.) (same), cert. denied, __ U.S. __, 118 S. Ct. 1854 (1998); cf. Knapp, 1 F.3d at 1030 (stating that, under section 3109, "there is no concrete rule requiring the officers to wait a specific period of time before entry"). Instead, the amount of time that officers must wait after knocking and announcing depends on the particular facts and circumstances of each case. See Goodson, 165 F.3d at 614; Spikes, 158 F.3d at 926 ("Whether police officers paused long enough before admitting themselves into a home thus entails 'a highly contextual analysis, [requiring] examin[ation of] all the circumstances of the case.'" (citation omitted)); United States v. Jackson, 585 F.2d 653, 662 (4th Cir. 1978) ("It is the rule that the time which must elapse after knocking and announcing . . . varies with the exigencies of each case."); cf. Richards v. Wisconsin, 520 U.S. 385, 394 (1997) (stating that "in each case, it is the duty of a court confronted with the question to determine whether the facts and

circumstances of the particular entry justified dispensing with the knock-and-announce requirement"); <u>Wilson</u>, 514 U.S. at 934 (explaining that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests."); <u>Knapp</u>, 1 F.3d at 1030 (noting that violation of "the knock and announce requirement [of section 3109] depends upon the particular circumstances surrounding the execution of the warrant").  In fact, exigent circumstances such as the risk of destruction of evidence or the threat of physical violence may justify dispensing with the knock-and-announce principle altogether.  <u>See</u> <u>Richards</u>, 520 U.S. at 394.  This is not to say that the mere likelihood that drugs or weapons will be found in the searched premises alone will support the reasonableness of a given waiting period.  <u>See</u> <u>Moore</u>, 91 F.3d at 98 ("The mere statement that firearms are present, standing alone, is insufficient" to show that exigent circumstances justified immediate entry.); <u>cf.</u> <u>Spikes</u>, 158 F.3d at 926 (stating that while the presence of drugs is "not a conclusive factor, [it] lessens the length of time law enforcement must ordinarily wait outside before entering a residence").  Further, to the extent that officers attempt to justify a brief waiting period on the risk of destruction of evidence alone, we note that a few extra seconds is unlikely to prevent a suspect from flushing large quantities of evidence down the toilet or destroying it in a kitchen disposal.

We now turn to Defendant's argument that the Wichita Police Department's alleged ten-second policy violates the knock-and-announce principle. In response to this argument, the Government informs us that no such policy was introduced into evidence and argues that Defendant only "infers that a 'policy' exists from the testimony of the officers" involved in the search. Appellee's Br. at 11. However, the record contains direct testimony that the Wichita Police Department trains its officers to wait ten seconds after knocking and announcing before forcibly entering a residence. See R., Vol. II at 38, 47. This "policy" does not vary according to the size of the premises to be searched, but instead seems to apply "across the board." Id. at 39.

Whether or not the officers' testimony is sufficient to prove the existence of a ten-second policy within the Wichita Police department, such an inflexible policy clearly would violate the knock-and-announce standard. Cf. United States v. Ward, __ F.3d __, 1999 WL 152998, at *4 (4th Cir. 1999) (stating that a purported sixty-second FBI policy "would be troublesome" under section 3109 in light of rule that amount of time officers must wait varies with exigencies of each case). As explained above, compliance with the knock-and-announce component of the Fourth Amendment reasonableness inquiry must be evaluated on a fact-dependent, case-by-case basis. Without some additional evidence regarding, for example, the size of the house, the presence of guns, or other exigent

circumstances, officers frequently may be unable to justify a waiting period as short as ten seconds. In light of these considerations, a policy requiring officers to wait ten seconds in every case would not comport with existing Supreme Court and circuit precedent.

Moreover, we are particularly troubled by the record in this case in which officers testified that occupants whose homes are searched by the Wichita Police Department rarely reach the door before the officers break it open. Specifically, Officer Tracey Repp testified that in his experience of executing over fifty search warrants, no occupants ever had been able to reach the door to open it before officers broke it down, see R., Vol. II at 38; Officer Jeffrey T. Easter testified that only twice in his experience of executing over fifty search warrants had anyone reached the door in time to open it. See id. at 47, 55. Our concern is heightened because this court "seem[s] to be reviewing the actions of Kansas police executing 'knock and announce' warrants with some frequency." McCloud, 127 F.3d at 1288 n.3 (citing cases involving executions of search warrants by Kansas police). In spite of our grave concerns, this case does not squarely present us with the issue of whether the Wichita Police Department's alleged ten-second policy violates the knock-and-announce principle. Because a reasonable view of the evidence supports the district court's conclusion that the officers who executed the warrant on Ms. Payne's residence complied with the

knock-and-announce rule, the circumstances of this case require us to affirm in any event.

In this case, the record supports a finding that the officers waited at least fourteen and up to twenty seconds from the time they first knocked and announced until they applied force to the interior door of Ms. Payne's residence.[3] The officers testified that they announced their presence and authority at least twice before forcibly entering the residence and that they waited a few additional seconds between forcing open the exterior screen door and beginning to break down the interior door. Further, we agree with the Sixth Circuit's determination that if a warrant is executed in the middle of the day the amount of time the officers need to wait before entering is generally reduced. See Spikes, 158 F.3d at 927. Thus, the required waiting period was somewhat reduced because the because the officers executed the warrant at 10:00 a.m., "when most people are awake and engaged in everyday activities." Id. Because the record shows that the officers waited for at least fourteen and as long as twenty seconds before applying force to the interior door, we cannot say that the trial court committed clear error in upholding the search of Ms. Payne's residence. We therefore conclude that the

---

[3]"[T]he reference point for the reasonableness determination is the amount of time between when the officers begin to announce their presence and when the officers hit the door with a battering ram or other implement which could destroy the door and allow them entry." McCloud, 127 F.3d at 1288, n.2.

district court properly denied Defendant's motion to suppress.

III.

Defendant also argues that the evidence presented at trial was insufficient to support his convictions of possession with intent to distribute cocaine base and possession with intent to distribute marijuana under 21 U.S.C. § 841(a)(1). "In making this argument, [Defendant is] faced with a high hurdle." United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.), cert. denied, 519 U.S. 889 (1996). To evaluate whether the evidence is sufficient to support a jury's verdict, "this court must review the record de novo and ask only whether, taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt." Id. (internal quotation marks and citations omitted). We determine whether the evidence is sufficient "by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'" United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)).

To sustain a conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that a defendant: "(1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3)

-14-

intended to distribute the controlled substance." United States v. Mains, 33 F.3d 1222, 1228 (10th Cir. 1994). For purposes of this test, possession may be either actual or constructive. See id. "Constructive possession occurs when a person 'knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found.'" Wilson, 107 F.3d at 778 (citation omitted). Although constructive possession may be shown by circumstantial evidence, "the government must show 'a sufficient nexus between the defendant and the narcotics.'" Id. (citation omitted).

With respect to the cocaine base charge, Defendant disputes the jury's verdict only as to his knowing possession of the drugs; he admits that the large quantity of cocaine base seized from the residence "would be more than adequate to sustain a conviction for possession with intent to distribute." Appellant's Br. at 13. Because Defendant did not have actual possession of the cocaine base at the time of the search, we must determine whether he constructively possessed the drugs by virtue of his knowing ownership, dominion, or control over Ms. Payne's residence and the drugs.

Although Defendant may not have resided at Ms. Payne's residence on a full-time basis, the record indicates that his girlfriend and daughter both lived there and that he stayed there three to four nights a week. In addition, Ms. Payne's mother, Karon Howard, testified that Defendant lived there. Ms. Payne's

-15-

stepfather, Willie Howard, testified that he and Karon Howard often visited Ms. Payne and Malaycia and that Defendant was present on most of those occasions. Further, on the day of the search, officers discovered a single key in Defendant's coat pocket which fit the front door lock of Ms. Payne's residence. Officers also discovered mail addressed to Defendant at Ms. Payne's address. This evidence readily suggests that Defendant exercised sufficient dominion and control over Ms. Payne's residence, and it supports an inference that Defendant constructively possessed the cocaine base.

Defendant also claims that there was "no clear reason" why the jury should have connected him to the cocaine base. Id. He explains that the drugs were found in a hole in the ground over thirty-nine feet from the back of Ms. Payne's residence in an area accessible to many people, including the occupants of a nearby fraternity house. However, the officer who observed the residence prior to obtaining and executing the search warrant testified at trial that on two occasions he saw people walking up to the house and then saw Defendant walk out the front door and towards the backyard with them. The informant utilized by police for a controlled buy also told officers that she had purchased crack cocaine from an individual named Loc, which is Defendant's nickname. Further, a marked twenty-dollar bill used by the informant to purchase cocaine base from Defendant was found with approximately $3,000 in cash and some cocaine base in a night stand

next to the bed in which Defendant was lying when officers executed the warrant. Finally, although Defendant claims that residents of the fraternity house had ready access to the hole in Ms. Payne's backyard where the cocaine base was hidden, they would have had to enter someone else's private property and climb over a four-foot-high fence to reach the hole. We conclude that the evidence establishes a sufficient nexus between Defendant and the cocaine base for a jury to conclude beyond a reasonable doubt that Defendant constructively possessed the cocaine base with intent to distribute it.

With respect to his conviction for possession with intent to distribute marijuana, Defendant claims that the seized marijuana was "scattered throughout the interior of the residence" and, therefore, was indicative only of "use or simple possession rather than [possession] with an intent to distribute." Id. at 12-13. To lend credence to this argument, Defendant points out that Ms. Payne was convicted only of simple possession even though the physical evidence used against her was the same as that used against him and Ms. Payne admitted that she used marijuana.

The evidence directly linking Defendant to the marijuana is not as ample as the evidence linking him to the cocaine base. Nevertheless, the jury could reasonably infer that Defendant constructively possessed the marijuana seized from Ms. Payne's residence with intent to distribute it. First, the evidence which

suggests that Defendant exercised dominion and control over Ms. Payne's residence also supports an inference that he constructively possessed the marijuana. The evidence also shows a sufficient nexus between Defendant and the marijuana for the jury to conclude that he constructively possessed it. For example, officers discovered marijuana throughout the room where Defendant was found, including in the night stand where they located the $3,000 in cash, the marked twenty-dollar bill, and some cocaine base. Second, the evidence supports a reasonable inference that Defendant intended to distribute or distributed the marijuana. Officer Easter testified that he saw some individuals approach Ms. Payne's residence and that they left the residence shortly thereafter. He testified further that, in response to his subsequent questioning, one of those individuals told Officer Easter that he had purchased marijuana at the residence in question. Although the individual did not indicate from whom he had purchased the marijuana, the jury could reasonably infer from the strong evidence showing that Defendant knowingly possessed and distributed cocaine base and that it was also he who sold the marijuana. The record also reveals that sufficient quantities of marijuana were located in the residence for the jury to infer that it was used for distribution rather than for personal use. Further, although Ms. Payne testified that some of the marijuana found in the residence was hers, she stated that not all of it was. Finally, Ms. Payne's testimony that the $3,000 found in the night stand

was hers and that she had earned it by working and saving it over time could easily have been discredited by the jury because of the evidence indicating that the marked twenty-dollar bill was found within the $3,000 in the night stand. This evidence reasonably supports the jury's conclusion that Defendant knowingly possessed marijuana with intent to distribute it.

In sum, we conclude that the evidence is sufficient to sustain Defendant's convictions of possession with intent to distribute both cocaine base and marijuana.

We **AFFIRM** the district court's denial of Defendant's motion to suppress and **AFFIRM** Defendant's convictions.