**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN PERRY SANGER,

      Defendant-Appellant.

No. 01-5196
(D.C. No. 00-CR-79-K)
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **MURPHY**, Circuit Judges.

**I. INTRODUCTION**[1]

    John Sanger was convicted of one count of knowingly using a minor to

engage in sexually explicit conduct for the purpose of producing a visual

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

depiction, in violation of 18 U.S.C. § 2251(a); one count of transporting or causing the transportation of child pornography in interstate commerce, in violation of 18 U.S.C. §§ 2252(a)(1) and 2(b); and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). He was sentenced to a total of 293 months' imprisonment. Sanger challenges his convictions on several grounds. We have jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm**.

## II. FACTUAL BACKGROUND

Sanger was a Sunday school teacher and youth group leader at a church in Bristow, Oklahoma. Beginning in 1999, Sanger invited children from his church back to his home near the church. On certain occasions, Sanger had the children pose nude for photographs he would take using a digital camera. Sanger also molested the children and photographed the molestation. He had the children use computer equipment in his home to both download pornographic material from the Internet and upload the digital pictures he had taken of them.

In September 1999, two of the children told their mother of Sanger's activities. She contacted the Bristow police department. Bristow police interviewed several of the children who had visited Sanger's house. All of the children recounted similar allegations of abuse. Sergeant John Davis of the Bristow police, assisted by an assistant district attorney, prepared an affidavit for a search warrant. The affidavit summarized the children's allegations, and

requested a warrant to seize the digital camera with which Sanger had taken sexually explicit pictures; any film, motion picture, video tape, or disks containing sexually explicit images of minors; and any computer software, games, images, hard drives, recordings, and stored files which may be found on a computer. The warrant authorized the seizure of the above listed items.

Six to eight officers participated in the search of Sanger's residence on September 29, 1999. There is some conflict in the evidence over the precise manner in which the warrant was executed. Davis testified that he knocked on the door and announced "police department, search warrant." He further testified that after the announcement he saw through a window in the door Sanger running toward the back of the house. Police forced their way into the house, overpowered Sanger and took him to the floor, and stopped what appeared to be wholesale deletion of files on the computers.

Sanger's account of the event differed. He testified that he did not hear a knock on the door or hear the police announce their presence. He testified he heard only the sound of splintering wood. After hearing that sound, he became aware that police officers entered his back door, and so he turned to face them. Sanger testified that police then forced him to the ground and handcuffed him. He denied deleting any files.

Virginia Carter, the grandmother of one of the child victims, was approximately a block away from Sanger's residence when police executed the warrant. She testified that she saw an officer knock on Sanger's front door but could not hear anything because a heavily used highway was nearby. She further testified that police were on Sanger's front porch for less than a minute before forcing their way inside.

Officers seized, among other things, hundreds of videotapes containing adult pornography, stamps and postcards, a radio/cassette CD player, a box containing envelopes and stamps, a film package containing thirty pictures, a TV, a red box containing computer disks, a sack containing coins, a board game, four computers, a digital camera, and dresses that matched the description of clothing some of the children wore. Some of the seized items were eventually returned to Sanger.

Sanger moved to suppress all evidence discovered in the search, arguing that the warrant did not specify with sufficient particularity the place to be searched or the items to be seized, that items not specified in the warrant were seized, and that the police improperly made a no-knock entry. The district court denied the motion, ruling that the warrant was specific and that the seizure of items not mentioned in the warrant did not mandate suppression of the other,

properly seized items. The court also found that the officers did knock on Sanger's door and ruled that Sanger's apparent flight justified the forced entry.

At trial, the government called Sharon Carlsen, an FBI intelligence research specialist. Carlsen testified that she examined the 1,500 diskettes and twenty-seven zip disks seized from Sanger's residence. During the direct examination of Carlsen, the following exchange took place:

> Q:    Now, when you got these boxes of disks and started looking at how much there was, was there only one person who was going to be assigned to this project?
>
> A:    Yes. This project was assigned to one analyst. But the priority of this case, because of potential victims *and a pending State case*, we were asked – a lead was sent to us by the agent to expedite it.

(emphasis added). Based on the italicized language, the defense moved for a mistrial, arguing that Carlsen had improperly referred to the state charges Sanger faced. The district court denied the motion but offered to give a limiting instruction. The defense declined.

During closing argument, the government stated

> You heard the children speak already. They spoke volumes. You saw the pictures, and every picture is worth a thousand words. These speak volumes as well. And you heard me speak. *You will also hear [defense counsel] speak today . . . .*

(emphasis added). The defense chose not to make a closing argument and then moved for a mistrial, arguing that the prosecution wrongfully gave the impression

to the jury that defense counsel would make a closing argument. The district court denied the motion, ruling that "[y]ou can't set up your own grounds for a mistrial. It was your decision whether or not to argue in closing argument to the jury, and [the prosecution] had no idea you would waive."

## III. DISCUSSION

### A. Motion to Suppress

In reviewing the denial of a motion to suppress, we will not disturb the district court's factual findings unless clearly erroneous. *See United States v. Jenkins*, 175 F.3d 1208, 1212 (10th Cir. 1999). We review the reasonableness of the search and the sufficiency of the warrant de novo. *See id.*; *United States v. Simpson*, 152 F.3d 1241, 1246 (10th Cir. 1998).

Sanger first contends that the warrant did not describe with particularity the place to be searched or the items to be seized. A warrant's description of the premises to be searched is sufficient if it "enables the officers to ascertain the place to be searched with reasonable effort." *United States v. Dahlman*, 13 F.3d 1391, 1394 (10th Cir. 1993) (quotation omitted). Similarly, "a warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997) (quotation omitted). The warrant in this case listed the premises to be searched as

> FROM THE INTERSECTION OF of [*sic*] Mayfair and Roland
> Streets, which is located within the city limits of Bristow, Creek
> County, Oklahoma, proceed west approximately one block to the
> intersection of Mayfair and Edgemere Streets and then proceed left
> on Edgemere approximately one block to the intersection of
> Edgemere and Meadowhill Streets and from there proceed left on
> Meadowhill Street approximately one-half block and there on the
> west side of the street is a red brick house with a grey shingled roof.
> There is also a white overhead garage door with four glass windows
> which all face Meadowhill Street.  On the upper right hand corner of
> the garage door is the number 38 in black numbers and on the upper
> left hand corner of the garage door is the number 38 in silver
> numbers.

The description, accurately providing the physical description of the house, is

sufficient.  *Cf. United States v. Hutchings*, 127 F.3d 1255, 1259 (10th Cir. 1997).

The description of the items to be seized included those items

> wherein the minor is engaged in . . . any act of sexual intercourse,
> any act of fellatio, or cunnilingus, or in any act of excretion in the
> context of sexual activity, or in any lewd exhibition of the uncovered
> genitals or pubic area or areola of the breast in the context of
> masturbation or other sexual activity. . . .

This court has upheld search warrants that merely list "child pornography" or

items showing "minors engaged in sexually explicit conduct" as the items to be

seized.  *See United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000).  The

more detailed description in this case is therefore sufficient.

Sanger also contends that the search exceeded its permissible scope because

officers seized items that were not listed in the warrant.  Sanger does not dispute

that the government put into evidence only properly seized items.  Nevertheless,

he argues that all of the fruits of the search, even those validly seized, must be suppressed. We disagree. Only the improperly seized evidence, not all of the evidence, must be suppressed, since we cannot say the search was conducted in "flagrant disregard for the terms of the warrant." *United States v. Le*, 173 F.3d 1258, 1269 (10th Cir. 1999) (quotation omitted) (listing examples of "flagrant disregard" as seizing 667 items not named in the warrant or seizing everything of value in a house).

Sanger's final Fourth Amendment contention is that "there is credible evidence that there was forced entry prior to notice being given to the Defendant of the officer's presence." The district court expressly found, however, that the officers knocked prior to entry. We cannot say that factual finding is clearly erroneous. At any rate, the knock-and-announce rule may be dispensed with entirely when exigent circumstances exist. *See Jenkins*, 175 F.3d at 1214. Sergeant Davis testified that he saw Sanger run toward the back of the house. Such flight, raising concerns regarding evidence destruction and officer safety, justifies an unannounced forced entry. *See id.*

**B. Motions for Mistrial**

We review the denial of a motion for mistrial for abuse of discretion. *See United States v. Gabaldon*, 91 F.3d 91, 93-94 (10th Cir. 1996). After carefully reviewing the record, we conclude the district court was well within its discretion

in concluding that Carlsen's mention of pending state charges did not so infect the trial to require a mistrial. Furthermore, the prosecutor's closing argument which stated that the defense would also give closing argument did not deprive Sanger of a fair and impartial trial. *See id.* at 93. Certainly, the district court's decision that Sanger was not sufficiently prejudiced was not an abuse of discretion.

## V. CONCLUSION

Sanger's convictions are **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge