**F I L E D**

**UNITED STATES COURT OF APPEALS**

**May 19, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

VICTOR CISNEROS, also known as
Miguel Angel Cisneros, also known as
Victor Manuel Cisneros,

    Defendant-Appellant.

No. 05-4078
(District of Utah)
(D.C. No. 1:04-CR-37-PGC)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **SEYMOUR** and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this court has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant-appellant, Victor Cisneros was charged in a one-count indictment with possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1). The incident that led to the filing of the charge began when Cisneros was pulled over for a traffic violation by Utah Highway Patrol Trooper Ellis Alexander. At Cisneros' trial, Alexander testified he was on a routine patrol January 20, 2004, when he noticed the car in front of him, a Chevrolet Beretta, had two tail lights that were not functioning. Alexander testified he activated the lights on his patrol car and the Beretta turned down an alleyway, traveling approximately seventy-five yards before coming to a stop. Alexander was unable to see inside the vehicle because the windows were tinted and foggy.

Trooper Alexander exited his vehicle and made contact with defendant Cisneros who was the driver of the Beretta. Cisneros was unable to produce his driver's license, proof of insurance, or registration. Alexander testified he noticed Cisneros' eyes were red and his pupils dilated. He also stated Cisneros exhibited signs of bruxism,[1] which Alexander testified is associated with the use of central nervous system stimulants. When Alexander asked who owned the Beretta, Cisneros gave a male Hispanic name. Cisneros also told Alexander his

---

[1]Bruxism is "the habit of unconsciously gritting or grinding the teeth." Webster's Third New International Dictionary 287 (1993).

name was Miguel Cisneros. After a fingerprint analysis was completed several weeks later, it was discovered that his real name was Victor Cisneros.[2]

Alexander returned to his patrol car and ran the license plate and the name Miguel Cisneros. He discovered the vehicle was registered to Amber Short and there was an outstanding warrant for Miguel Cisneros. Alexander decided to arrest Cisneros on the outstanding warrant and called for Officer Christiansen of the Ogden City Police Department to back him up. When Officer Christiansen arrived, he and Trooper Alexander instructed Cisneros to exit the vehicle. Despite being informed of the outstanding warrant, Cisneros did not tell the officers his real name. Cisneros was searched and officers found a cigarette lighter and some loose change.

Cisneros was placed in the back seat of Alexander's patrol car and Alexander decided to impound the Beretta. When Alexander put his head inside the vehicle, he smelled marijuana and saw pieces of fresh, green marijuana leaves on the floor in the back seat. There were two passengers in the vehicle; one was seated in the front passenger seat and the second was seated in the back seat on the passenger's side. A third officer, who was able to speak Spanish, questioned the two passengers. After presenting their identification cards, both consented to a pat-down search. One passenger had approximately $200 in currency in his

---

[2]The name and birth date Victor Cisneros provided to Trooper Alexander were that of his brother, Miguel Cisneros.

pocket; the other passenger had approximately $400. When questioned by the officer, neither knew how much currency was in his pocket and both denied any knowledge of the marijuana.

Trooper Alexander then requested a drug-sniffing dog and handler from the Ogden Police Department. The handler, Officer McGuire, placed the dog inside the vehicle and it immediately alerted, pulling a dark stocking cap from the floor underneath the driver's seat. McGuire discovered a plastic baggie containing a white crystalized substance inside the cap. When he retrieved the cap from under the seat, he also noticed a pipe of the type commonly used to smoke methamphetamine. McGuire placed the pipe inside the cap and handed the cap to Trooper Alexander. Alexander performed a field test on the crystalized substance and it tested positive for methamphetamine. A laboratory test later confirmed the baggie contained more than forty-one grams of methamphetamine with a purity of ninety-three percent, yielding a total quantity of 37.4 grams of methamphetamine.

At trial, the government also elicited testimony from Troy Burnett, an officer with the Ogden City Police Department. Officer Burnett testified that after the cap was discovered, he and Trooper Alexander commented on the fact that the two passengers were wearing baseball caps but Cisneros was not wearing a hat. The officers also observed that Cisneros' hair was disheveled and Burnett testified it appeared Cisneros had recently removed a hat from his head. Burnett then testified that the street value of the methamphetamine found in the Beretta

-4-

was approximately $1,800 to $1,900. If the drugs had been repackaged into smaller quantities, however, Burnett estimated the street value to be approximately $8,000 to $10,000. Burnett further testified it would be "absolutely inconsistent" for an addict to purchase 37.4 grams of methamphetamine for personal use. Based on Burnett's experience and training, he opined that the quantity and purity of the methamphetamine found in the car indicated it was "definitely" for distribution and not for personal use.

At the close of the government's case, Cisneros moved for a judgment of acquittal. The district court denied the motion. Cisneros then called several witnesses. The first, Richard Thompson, testified he sold the Chevrolet Beretta on behalf of Amber Short during the early part of January 2004. He received $1,500 cash for the car and did not sign the title over. Thompson identified one of the passengers in the Beretta as the purchaser.

Patricia Martinez testified she had lived with Cisneros for eight years. She first became aware Cisneros was using drugs in June 2003 when Cisneros told her he was using crystal methamphetamine. According to Martinez, Cisneros was still using drugs in January 2004. Martinez testified two men came to the house looking for Cisneros at approximately 11:30 p.m. on January 19, 2004. According to Martinez, one of the men was wearing a dark, beanie-style knit cap. Cisneros told Martinez the two men were from Arizona and needed a ride because

they were unfamiliar with the area. Cisneros then left with the men. Martinez was Cisneros' final witness.

The jury convicted Cisneros of possession with intent to distribute 37.4 grams of methamphetamine. He was sentenced to a term of eighty-seven months' incarceration. In this appeal, Cisneros attacks his conviction, arguing the Government presented insufficient evidence at trial demonstrating he constructively possessed the methamphetamine or had the intent to distribute it.

This court reviews *de novo* the sufficiency of evidence presented at trial. *See Unites States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). Evidence is sufficient to support a conviction if the direct and circumstantial evidence and the reasonable inferences drawn therefrom, collectively viewed in the light most favorable to the Government, would permit any reasonable juror to find the defendant guilty beyond a reasonable doubt. *See id*. When conducting our review, "we accept the jury's resolution of conflicting evidence without weighing the credibility of witnesses." *United States v. Muessig*, 427 F.3d 856, 861 (10th Cir. 2005).

To sustain a conviction for possession of methamphetamine with intent to distribute, the Government was required to prove Cisneros (1) knowingly possessed the methamphetamine and (2) intended to distribute it. *See United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996). Possession under § 841(a)(1) may be actual or constructive and the Government may rely on either direct or

circumstantial evidence. *United States v. Jenkins*, 175 F.3d 1208, 1216 (10th Cir. 1999). In this case, the Government relied on circumstantial evidence to establish Cisneros constructively possessed the methamphetamine. "In cases involving joint occupancy of a vehicle where a controlled substance is found, some evidence supporting at least a plausible inference the defendant had knowledge of and access to the controlled substance must be introduced." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004). This court has also held "it is permissible to infer that the driver of a vehicle has knowledge of the contraband within it." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1130 (10th Cir. 2004) (quotation omitted).

We conclude the Government presented ample evidence from which a jury could conclude Cisneros had both knowledge of and access to the methamphetamine. *See United States v. Colonna*, 360 F.3d 1169, 1179 (10th Cir. 2004). Officer McGuire testified he found the drugs under the driver's seat of the Beretta and it was uncontested at trial that Cisneros was the driver. *See Pulido-Jacobo*, 377 F.3d at 1130. The Government also presented evidence Cisneros failed to stop immediately once Trooper Alexander activated his emergency lights. Alexander testified drivers typically pull over immediately when requested to do so by an officer. Further, Cisneros was unable to provide any identification, registration, or proof of insurance. When asked to identify himself, he gave Trooper Alexander his brother's name and birth date and did not disclose

his real name even when informed there was an outstanding warrant for Miguel Cisneros. The circumstances surrounding the traffic stop support a reasonable inference Cisneros knew he was transporting an illegal substance. *See United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986) (holding a jury may infer a defendant's "guilty knowledge from the undisputed testimony that [defendant] gave the police a false name").

The Government also presented evidence linking the hat in which the drugs were found to Cisneros. Trooper Alexander and Officer Burnett both testified that the two passengers in the Beretta were wearing baseball caps but Cisneros was not wearing a hat. After the hat and the drugs were discovered in the car, Alexander and Burnett noticed Cisneros' hair was messy and disheveled and discussed this between themselves. Burnett testified "it appeared that [Cisneros] recently had worn that beanie cap."

Cisneros argues the fact the methamphetamine was found under the driver's seat should not be given any weight because the two passengers were alone in the Beretta for nearly five minutes and their actions were not observed during that time because the dark tint of the windows obscured Trooper Alexander's view. Thus, according to Cisneros, the passengers had time to place the drugs under the driver's seat after the vehicle was stopped. This argument does not undermine the Government's evidence indicating Cisneros had knowledge of and access to the drugs discovered under his seat. It is settled that "[t]he evidence necessary to

support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *Pulido-Jacobo*, 377 F.3d at 1129.

Cisneros also argues Martinez's testimony was the only direct evidence on the ownership of the beanie cap and her testimony linked the cap to one of the passengers, not to him. Further, Trooper Alexander did not reference Cisneros' disheveled hair or the possibility that the beanie cap belonged to Cisneros in his police report. Cisneros' arguments, however, go to the weight of conflicting evidence and the credibility of the witnesses, matters for the jury and not this court. *See Delgado-Uribe*, 363 F.3d at 1081. Obviously, the jury disbelieved Martinez and accepted Trooper Alexander's testimony. After reviewing the record, we conclude the Government's evidence and the plausible inferences to be drawn therefrom, considered as a whole and in the light most favorable to the Government, are sufficient to sustain the jury's finding that Cisneros knowingly possessed the methamphetamine found in the Beretta.

Cisneros next argues the Government's evidence was insufficient to support the jury's finding he had the intent to distribute the methamphetamine. Proof of intent to distribute drugs is frequently established through circumstantial evidence and "may be inferred from the possession of a large quantity of the substance." *United States v. Powell*, 982 F.2d 1422, 1430 (10th Cir. 1992). The Government introduced evidence the methamphetamine recovered from the Beretta weighed

more than forty-one grams and had a purity of ninety-three percent. Officer Burnett testified that a typical addict uses only one-third to one-half gram of methamphetamine a day. Burnett also testified that the average purity of methamphetamine possessed by the average user is approximately seventy-five percent. The purity of methamphetamine found in the Beretta indicated to Burnett that it was obtained from a top-level source and had not yet been cut or diluted to increase the bulk.[3] From the Government's evidence, the jury could reasonably infer that Cisneros had an intent to distribute the drugs.

Upon review of the entire record, this court concludes the Government presented sufficient evidence from which a reasonable jury could conclude Cisneros possessed the methamphetamine with the intent to distribute it. Accordingly, the judgment of conviction is hereby **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[3]Burnett testified that dealers add methylsulfonylmethane (MSM) to methamphetamine to increase its volume which, in turn, increases the dealers' profits.