**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 30 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TIMOTHY R. LLOYD,

    Defendant - Appellant.

No. 01-3297
(D.C. No. 00-CR-40077-RDR)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

---

On August 22, 2000, Timothy R. Lloyd ("Lloyd") was charged in a three-count indictment as follows: possession of methamphetamine with an intent to distribute in violation of 21 U.S.C. § 841(a); attempt to manufacture methamphetamine in violation of 21 U.S.C. § 841(a); and possession of a listed chemical with an attempt to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1). On September 19, 2000, Lloyd filed a motion to suppress the use at trial of evidence obtained in a search of his van

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

occurring on March 26, 2000, and the evidence obtained in a search of his two residences occurring on March 26 and March 29, 2000. On October 20, 2000, the district court in a memorandum order granted Lloyd's motion to suppress in part, and denied it in part. Specifically, the district court suppressed the use at trial of the evidence obtained in the search of Lloyd's van, but held that the evidence obtained in a search of Lloyd's two residences on March 26 and March 29, 2000, was admissible and not subject to a motion to suppress. On October 27, 2000 the government filed a motion to reconsider that part of the district court's order suppressing the use at trial of evidence obtained in the search of Lloyd's van, which motion was denied on December 22, 2000. Thereafter on April 17, 2001, Lloyd filed a motion with the district court to reconsider its ruling with regard to the use at trial of evidence obtained in the search of Lloyd's two residences. The government also filed an additional motion asking the district court to reconsider its order of December 22, 2000, denying its motion to reconsider the order of October 20, 2000. On May 17, 2001, the district court vacated its earlier order of October 20, 2000, and denied Lloyd's motion to suppress *in toto,* holding that the government, at trial, could use the evidence obtained in the search of Lloyd's van, as well as the evidence obtained thereafter in the search of Lloyd's two residences.

On June 6, 2001, pursuant to Fed. R. Crim. P. 11 (a)(2), Lloyd entered a conditional plea of guilty to a one count information alleging a conspiracy to manufacture and distribute a detectable amount of methamphetamine. He was sentenced to

imprisonment for 151 months followed by 36 months of supervised release. On appeal, counsel argues that the district court erred in denying Lloyd's motion to suppress, as such relates to both the search of Lloyd's van and his two residences. Finding no reversible error, we affirm.

On March 26, 2000, at 1:19 p.m. Lloyd, while traveling east in a blue two-tone van on Interstate 70, was stopped by Russell County Sheriff's Deputy Kelly Schneider ("Schneider") on suspicion of driving while intoxicated. According to Schneider, Lloyd was weaving in and out of his driving lane. When asked, Lloyd said he had not been drinking. When requested, Lloyd gave Schneider his driver's license and registration. Schneider returned to his patrol car, ran the usual checks and wrote Lloyd a warning citation. Schneider then returned to Lloyd's vehicle and asked Lloyd to step out of his vehicle and accompany him to the area between the rear of the van and the front of the patrol car. After giving Lloyd the warning citation and his driver's license and registration, Schneider asked Lloyd if he could "ask" him a couple of questions. Lloyd replied "yes." Schneider stated that there was a lot of drug traffic on I-70 and asked Lloyd if he had anything like that in his van. Lloyd replied he did not. Schneider then asked if he could look in Lloyd's van. Lloyd replied "no." Schneider testified at the suppression hearing that he had "received prior information reference to Mr. Lloyd manufacturing and distributing methamphetamine." Because of the "prior information" he had received concerning Lloyd, Schneider believed he was justified in running his

narcotics dog around the car, which he then did. When the dog alerted, Schneider searched the van and found methamphetamine, marijuana, drug paraphernalia, and a "blue money bag." After searching the van, Schneider prepared affidavits in support of applications to search Lloyd's residence in Russell, Kansas, and a second residence in Lorraine, Kansas, which warrants issued later the same day. An ensuing search of Lloyd's Russell residence disclosed nothing. The search of Lloyd's Lorraine residence disclosed certain items related to the manufacture of methamphetamine.

Schneider's testimony at the suppression hearing held on October 11, 2000, concerning the "prior information" about Lloyd which he had at the time he stopped Lloyd driving his blue van east on I-70 in Russell County, Kansas, is summarized as follows:

1. On December 17, 1999, he (Schneider) received a phone call from the Ellsworth County Sheriff, one Tracey Ploutz, wherein Ploutz advised him that he had talked to a confidential informant who stated that one Steve Shute was going to Lloyd's house in Russell to purchase methamphetamine.

2. In February, 2000, he learned that the Russell County Sheriff, one John Fletcher, had received a phone call from one Fred Deibes of the Corrections Department in Great Bend, that a confidential informant had advised him that Lloyd manufactured methamphetamine and had a large quantity of ephedrine and money in his house and also had a quantity of ephedrine stored across the Oklahoma border.

3. On March 5, 2000, he and an agent of the Kansas Bureau of Investigation interviewed Steve Shute, who stated that Lloyd runs the Last Chance Barbecue in Russell and that he

has two Ford vans, one white and one blue. Shute also advised him at the same time that Lloyd manufactured methamphetamine with the anhydrous and lithium metal process and that he had recently purchased between $3000 and $5000 worth of ephedrine in Oklahoma. Shute also added that Lloyd had recently purchased a house in Lorraine, Kansas, and had two persons who distributed one ounce of methamphetamine for him weekly.

and    4. On March 24, 2000, he and another agent of the Kansas Bureau of Investigation interviewed one Kenneth Peterson who stated that Lloyd manufactured methamphetamine and that he (Peterson) and Lloyd about three months before had gone to Oklahoma where he (Peterson) purchased $6000 worth of ephedrine with Lloyd's money. Peterson also stated at that time he had seen Lloyd cook and manufacture methamphetamine in Lloyd's house and his barbecue trailer and that Lloyd had recently purchased a second home in Lorraine, Kansas. Peterson also advised them that Lloyd often took his vans "out in the country" where he cooked his methamphetamine. Finally, Peterson stated that Lloyd often carried methamphetamine and cash in a "blue money bag."

On appeal, counsel for Lloyd does not argue that Schneider's initial stop of the van Lloyd was driving was unlawful, or that <u>after</u> the narcotics dog alerted to the van, Schneider did not have probable cause to search the van. Counsel does argue, however, that the "continued detention" of Lloyd after Schneider had returned to Lloyd his driver's license and registration and given him the warning ticket was unlawful because it was not based on any "objectively reasonable and articulable suspicion" that Lloyd was involved in criminal activity which had occurred or was occurring.

The government, in turn, concedes that nothing occurring between Schneider and Lloyd at the scene of the stopping indicated any past or present criminal conduct on the

part of Lloyd, except for the traffic violation. However, the government does contend that Schneider's continued detention of Lloyd after he had returned Lloyd's driver's license and registration to him and given him the warning citation was lawful since, based on the "prior information" which Schneider possessed, he had an "objectively reasonable and articulable suspicion" that Lloyd was engaged in drug trafficking. As indicated, the district court on October 20, 2000, agreed with Lloyd's counsel and suppressed the use at trial of the evidence seized in Schneider's search of the van. However, on May 17, 2001, the district court vacated its earlier order and denied Lloyd's motion to suppress the use at trial of the evidence taken from Lloyd's van. In changing its mind on the matter, the district court spoke as follows:

> "The court can only say that further review of the record has convinced us that we earlier reached an incorrect decision. We certainly regret this turn of events. Nevertheless, we believe that it is necessary to reach the correct result, even if the path to that decision is rocky."

In *United States v. McKissick,* 204 F.3d 1282, 1296 (10th Cir. 2000) in discussing our standard of review when reviewing a district court's denial of a motion to suppress, we spoke as follows:

> When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. Keeping in mind that the burden is on the

defendant to prove that the challenged seizure was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable *de novo.*

The fact that Lloyd did not consent to a search of his van cannot "form any part of the basis of reasonable suspicion." *United States v. Manuel,* 992 F.2d 272, 274 (10th Cir. 1993). Absent consent, the scope and duration of a traffic stop may be expanded beyond its initial purpose if, and only if, the police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Wood,* 106 F.3d 942, 946 (10th Cir. 1997).

In *United States v. Sokolow,* 490 U.S. 1, 7 (1989) the Supreme Court was concerned with whether there was "reasonable suspicion" to justify a Terry stop. In connection with the quantum of evidence necessary to establish "reasonable suspicion," the Supreme Court spoke as follows:

> The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch'" [*Terry v. Ohio*, 392 U.S. 1, 27]. The Fourth Amendment requires "some minimal level of objective justification" for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause. (Citations omitted.)

In accord with *Sokolow*, in *United States v. Williams,* 271 F.3d 1262, 1268 (10th Cir. 2001) we spoke as follows:

We consider it worth repeating that our analysis of whether an investigative detention is supported by an objectively reasonable suspicion of illegal activity turns on our review of the totality of the circumstances. In doing so, we "judge the officer's conduct in light of common sense and ordinary human experience," and we accord deference to an officer's ability to distinguish between innocent and suspicious actions. Reasonable suspicion, however, may not be derived from inchoate suspicions and unparticularized hunches. (Citations omitted.)

In *Alabama v. White,* 496 U.S. 325, 330 (1990) the Supreme Court commented on the "reliability" aspect of information previously received by a police officer involved in a traffic stop as follows:

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

As above indicated, in the instant case Schneider's "prior information" concerning Lloyd was derived from four sources. In this connection the Eighth Circuit in *United States v. Goodson*, 165 F.3d 610, 614 (8th Cir. 1999) in discussing "probable cause" (not reasonable suspicion) for a search warrant spoke as follows:

We also note that even though the other two informants may not have had a track record of reliability, their tips corroborated the first informant's tip and to some extent each other's tips, which also "render[s] their information enough to support a finding of probable cause." *United States v. Fulgham,* 143 F.3d 399, 401 (8th Cir. 1998).

In like fashion, in *United States v. Le,* 173 F.3d 1258, 1266 (10th Cir. 1999), a case where the sufficiency of an affidavit upon which a search warrant was challenged, we said:

> The affidavit contained information provided by two different informants whose stories were remarkably consistent. "[C]onsistency between the reports of two independent informants helps to validate both accounts." *United States v. Schaefer,* 87 F.3d 562, 566 (1st Cir. 1996); *see also United States v. Fulgham,* 143 F.3d 399, 401 (8th Cir. 1998) (holding that the magistrate's finding of probable cause was supported by, among other things, the "reciprocally corroborative" consistency in the information provided by two separate informants); *United States v. Pritchard,* 745 F.2d 1112, 1121 (7th Cir. 1984) (stating that "[b]y telling consistent yet independent stories, the informants provide 'cross-corroboration,' and enhance the reliability of the application as a whole" (citations omitted). Also, it was against the penal interest of the informants to provide this type of information to the police, a factor we have considered indicative of reliability. *See United States v. Sturmoski,* 971 F.2d 452, 457 (10th Cir. 1992).

In concluding that Schneider had such "reasonable suspicion" that Lloyd was engaged in an ongoing criminal activity as to justify his continued detention of Lloyd in order that he could run his narcotics dog around Lloyd's van, the district court spoke as follows:

> Deputy Schneider decided to run the drug dog around the van because he had been involved in an investigation of Mr. Lloyd prior to March 26, 2000, and had learned from several sources that Mr. Lloyd was actively engaged in the methamphetamine business. Deputy Schneider had received the following information: (1) a telephone call from the Ellsworth County Sheriff on December 17, 1999, indicating

- 9 -

that a confidential informant had told him that Steve Shute was going to Mr. Lloyd's house in Russell, Kansas, and purchasing methamphetamine; (2) a telephone call from Fred Deibes who worked with the Kansas Department of Corrections indicating that a confidential informant had told him that Mr. Lloyd manufactured methamphetamine and had a large quantity of ephedrine and money in his house as well as a quantity of ephedrine stored in Oklahoma; (3) information from Steve Shute on March 5, 2000, that Mr. Lloyd (a) manufactures methamphetamine, (b) purchases ephedrine in Oklahoma, (c) recently purchased a house in Lorraine, (d) drives two Ford vans, a blue one and a white one, (e) owns a business called the Last Chance Barbeque in Russell, and (f) has two people who distribute one ounce of methamphetamine weekly for him; and (4) information from Kenneth Peterson on March 24, 2000, that Mr. Lloyd (a) manufactured methamphetamine in his barbeque trailer, (b) traveled with Peterson to Oklahoma three months ago to purchase $6,000 of ephedrine, (c) recently purchased a house in Lorraine, (d) drives his vans out in the country and to the house in Lorraine and cooks the methamphetamine, and (e) often transports methamphetamine and cash in a blue money bag. Deputy Schneider also knew, based upon his training and experience, that drug dealers carry concealed weapons, drug money and contraband on their persons and in their vehicles.

Without further belaboring the matter, we conclude, under the authorities above cited, that the district court's ruling that Schneider had such "reasonable suspicion" as would justify Schneider's continuing detention of Lloyd until he ran his narcotics dog around the van, is supported by the record.

In this appeal, Lloyd also challenges the sufficiency of Schneider's affidavits upon which a magistrate judge issued search warrants authorizing a search of Lloyd's two residences. In those affidavits, Schneider, in addition to detailing the "prior information"

which he had concerning Lloyd, also set forth all the facts and circumstances surrounding his stop of Lloyd's van on March 26, 2000, and the evidence found in the van on that occasion. We agree with the district court that the affidavits were sufficient to meet the "probable cause" requirement of the Fourth Amendment. Much of counsel's argument is based on the assumption that the search of Lloyd's van was unlawful. Having held that the search of the van was lawful, this then is not a case of "fruit from a poisonous tree." *Wong Sun v. United States,* 371 U.S. 471 (1963) is inapplicable.

Judgment affirmed.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge