66 F.3d 1058
 95 Cal. Daily Op. Serv. 7472, 95 Daily Journal
D.A.R. 12,795
UNITED STATES of America, Plaintiff-Appellant,
v.
Felipe ZERMENO; Ramon Flores-Rivas, Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
Guillermo SILVA-SOSA, Defendant-Appellee.
 Nos. 94-50622, 94-50624.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 7, 1995.
Decided Sept. 25, 1995.
 
 David P. Curnow, Assistant United States Attorney, San Diego, CA, for plaintiff-appellant.
 Eugene G. Iredale, San Diego, CA, for defendant-appellee Zermeno.
 Frank M. Murphy, III, San Diego, CA, for defendant-appellee Flores-Rivas.
 William K. Mueller, Vista, CA, for defendant-appellee Silva-Sosa.
 Appeals from the United States District Court for the Southern District of California.
 Before: DAVID R. THOMPSON, LEAVY and TROTT, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 The government appeals the district court's order granting the motions of defendants-appellees Felipe Zermeno, Ramon Flores-Rivas and Guillermo Silva-Sosa (collectively "defendants") to suppress evidence found pursuant to a search of a "stash house." The government claims the district court erred in ruling that Zermeno and Silva-Sosa have standing to challenge the search, that the search warrant was overbroad, and that the agents executing the warrant failed to comply with the "knock and announce" requirement of 18 U.S.C. Sec. 3109.
 
 
 2
 We have jurisdiction under 28 U.S.C. Sec. 1291. We conclude that Zermeno and Silva-Sosa do not have standing to challenge the search under either section 3109 or the Fourth Amendment, and we reverse the district court's suppression order as to them.
 
 
 3
 The government does not challenge Flores-Rivas's standing. We conclude the manner in which the searching agents entered the "stash house" where Flores-Rivas was residing violated the statutory "knock and announce" requirement of section 3109. We thus affirm the district court's suppression order as to Flores-Rivas. We do not reach the issue of the search warrant's alleged overbreadth.
 
 
 4
 * On July 20, 1994, Drug Enforcement Administration Agent Alan E. Poleszak obtained a warrant to search a residence located at 4330 Adrienne Street in Chula Vista, California. Surveillance operations had revealed that Zermeno, Flores-Rivas, Silva-Sosa and others were trafficking in drugs and using that location as a "stash house."
 
 
 5
 The search was conducted the next day. Zermeno and Silva-Sosa did not reside at the Adrienne Street house and they were not there when it was searched. They had been arrested earlier at another location.
 
 
 6
 The evidence is conflicting with respect to the manner in which entry into the Adrienne house was accomplished. Agent Poleszak testified that when the agents approached the residence they found the "inside" front door, which was made of wood, open. However, the "outside" front door, which was made of perforated metal, was closed and locked with a deadbolt. Agent Poleszak testified that he pounded on the metal door loudly and yelled "Federal Agents-DEA; with a search warrant; open the door" two or three times in Spanish. He then saw Flores-Rivas approach the door. After "more than eight, less than thirty seconds" had passed and Flores-Rivas had made no move to open the door, the agents applied a pry tool and forced the door open.
 
 
 7
 Flores-Rivas disputed this version of the events. He testified he was sitting in the living room watching television when he heard the "humming of a car" outside the front window. He looked out the window and saw four or five men jump out of the sliding door of a gray van. He did not see any distinguishing markings on the vehicle. The men approached the front door of the house, and one of them shouted "Open the door, Open the door." There was no mention of a warrant at this time, and no one identified the men as police officers.
 
 
 8
 According to Flores-Rivas, at this point he was five meters from the front door. Before he could reach the door, the men outside began hitting it with a large metal object which he described as red in color, three feet long, with a square piece of metal on the front and handles. Flores-Rivas testified that when he reached the door and attempted to open it, he discovered the deadbolt had been bent and he was unable to unlock the door.
 
 
 9
 The search of the Adrienne Street house uncovered a small amount of marijuana, packaging materials, money counters, camouflage gear, two assault rifles, a machine gun and 1,550 rounds of ammunition. Zermeno, Flores-Rivas and Silva-Sosa were indicted for conspiracy to distribute marijuana, in violation of 21 U.S.C. Secs. 846 and 841(a)(1); use and carrying of a firearm in the commission of a drug crime, in violation of 18 U.S.C. Sec. 924(c)(1); and possession of machine guns, in violation of 18 U.S.C. Sec. 922(o).
 
 
 10
 All three defendants filed pretrial motions to suppress the evidence obtained as a result of the search. The government conceded Flores-Rivas had standing to contest the legality of the search, but argued Zermeno and Silva-Sosa did not. The district court disagreed. The court also determined that the search warrant failed to satisfy the particularity requirement of the Fourth Amendment,[1] and that the manner in which the agents entered the premises violated the "knock and announce" requirement of 18 U.S.C. Sec. 3109. The district court granted the defendants' motions to suppress, and this appeal followed.
 
 II
 
 11
 Whether a defendant has standing to contest the legality of a search presents a mixed question of fact and law. United States v. Singleton, 987 F.2d 1444, 1447 (9th Cir.1993). We review de novo the district court's ultimate legal conclusion regarding standing, but the court's findings of fact underlying that conclusion are reviewed for clear error. Id.
 
 
 12
 A defendant has standing to challenge the legality of a search on Fourth Amendment grounds only if he has a "legitimate expectation of privacy" in the place searched. Rakas v. Illinois, 439 U.S. 128, 148, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). The defendant bears the burden of establishing his legitimate expectation of privacy. Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).
 
 
 13
 The district court concluded that Zermeno had met his burden of establishing standing. As to Silva-Sosa, the district court stated "[h]e has been charged with possession in these matters, and he's entitled to standing."
 
 
 14
 Silva-Sosa concedes that a mere possessory interest in the item seized does not by itself confer standing to challenge the search of the place in which the item was found. Legal "possession of a seized good [is not] a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." United States v. Salvucci, 448 U.S. 83, 92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). Thus, Silva-Sosa did not have standing simply because he was charged with a possessory crime.
 
 
 15
 Silva-Sosa contends, however, that he is entitled to standing based on a theory of estoppel. He contends the government's theory of the case was that he frequented the Adrienne Street house and stored contraband there. He argues the government should not now be permitted to take the contradictory position that he lacks standing to challenge the search of the premises. We reject this argument. There is no contradiction in the government's positions. The mere fact that Silva-Sosa stored contraband at the Adrienne Street residence is insufficient to establish that he had a legitimate expectation of privacy there. See Rakas, 439 U.S. at 143, 99 S.Ct. at 430.
 
 
 16
 Zermeno's standing argument also fails. Zermeno contends he had a proprietary interest in the Adrienne Street house and this gave him a reasonable expectation of privacy in it. He claims he "paid for, used, and maintained" the house.
 
 
 17
 The problem with this argument is that Zermeno presented no evidence to support his asserted proprietary interest in the Adrienne Street house, and it was his burden to establish standing. Salvucci, 448 U.S. at 95, 100 S.Ct. at 2554-55; Rawlings, 448 U.S. at 104, 100 S.Ct. at 2561.
 
 
 18
 Zermeno argues he did not produce evidence of his proprietary interest in the Adrienne Street house because it was always the government's position that it was a "stash house" leased and operated by him. He says he relied on these assertions by the government. He argues the government challenged his standing in the district court solely on the ground that he was not present at the time of the search, and the government should not now be allowed to argue he lacked a proprietary interest in the house.
 
 
 19
 The complaint supports Zermeno's contention that the government's position was that Zermeno had a proprietary interest in the Adrienne Street house. In the complaint, the government alleged that "Zermeno leased the residence in a fictitious name for the purpose of disguising his connection to the residence." This, however, does not relieve Zermeno of his burden to establish standing. Singleton, 987 F.2d at 1449. A defendant is not entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing. Id. The government's assertions in its pleadings are not evidence. It was Zermeno's obligation to present evidence of his standing, or at least to point to specific evidence in the record which the government presented and which established his standing. He did not do so. Accordingly, he may not challenge the search of the Adrienne Street house as a violation of the Fourth Amendment.
 
 
 20
 In an alternative argument, Zermeno and Silva-Sosa argue the government agents violated the "knock and announce" requirement of 18 U.S.C. Sec. 3109 when they entered the Adrienne Street residence. They contend they have standing pursuant to this statute to challenge the search even though they were not at the Adrienne Street house when it was searched and did not present evidence that they had an expectation of privacy there.
 
 
 21
 Only a defendant whose personal interests have been infringed has standing to challenge the legality of an entry under section 3109. United States v. Lockett, 919 F.2d 585, 587 (9th Cir.1990). "To have a sufficient personal interest for purposes of standing under section 3109, the [defendant] must be a member of the class of persons sought to be protected by the statute." Id.
 
 
 22
 There are three interests that the "knock and announce" requirement of section 3109 is intended to serve. This requirement (1) reduces the potential for violence to both police officers and the occupants of the house into which entry is sought (safety interest); (2) guards against the needless destruction of private property (property interest); and (3) symbolizes respect for individual privacy (privacy interest). Id. at 588.
 
 
 23
 As we explained above, neither Zermeno nor Silva-Sosa had any expectation of privacy in the Adrienne Street house. Thus, they are not entitled to standing under section 3109 based on a privacy interest. Id. Nor are they entitled to standing based on a property interest, because they have not shown that they had a property interest in the house the agents forcefully entered. Finally, they do not come within the statute's safety rationale, because they were not present at the time of the search. See United States v. Valencia-Roldan, 893 F.2d 1080, 1081 n. 1 (9th Cir.) (even resident of apartment has no standing to assert a violation of section 3109 if he was not present at time of search), cert. denied, 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990); United States v. DeLutis, 722 F.2d 902, 908 (1st Cir.1983) (same).
 
 
 24
 We conclude that neither Zermeno nor Silva-Sosa has standing to challenge the legality of the search of the Adrienne Street house.
 
 III
 
 25
 The government does not contest Flores-Rivas's standing to challenge the search of the Adrienne Street house. Flores-Rivas resided there and he was present when the house was searched. We therefore consider the merits of his contention that the search was unlawful.
 
 
 26
 Under 18 U.S.C. Sec. 3109, an officer is permitted to "break open any outer or inner door of a house ... to execute a search warrant," but only if "after notice of his authority and purpose," he is refused admittance.
 
 
 27
 We review de novo the district court's legal conclusion that section 3109 was violated. See United States v. Ramos, 923 F.2d 1346, 1355 (9th Cir.1991). However, we review the district court's findings regarding the historical facts underlying this conclusion for clear error. See Id.
 
 
 28
 As indicated in the statement of facts above, the circumstances surrounding the agents' entry into the Adrienne Street house are in dispute. The district court heard conflicting testimony as to whether Agent Poleszak's "announcement" included the fact that the men at the door were police officers and had a search warrant. There was also conflicting testimony as to whether Agent Poleszak waited a period of "more than eight less than thirty seconds" after making his announcement, and whether the agents forced the door open only after seeing Flores-Rivas make no move to open it. Flores-Rivas testified that he responded promptly, but by the time he got to the door, the deadbolt had already been broken by the agents and, although he tried, the door would not open.
 
 
 29
 The district court resolved this conflict. It found:
 
 
 30
 [I] am ... going to make a finding that 3109 was violated by the way in which entry was made in the face of Mr. Flores-Rivas coming to the door and not being asked to open at that time, but, rather, the door broken.
 
 
 31
 We apply the clear error standard of review to this factual finding, and we give special deference to the district court's credibility determinations. See Ramos, 923 F.2d at 1356. Under this standard, the district court did not clearly err in finding that the agents broke the door before asking Flores-Rivas to open it. The agents violated section 3109 when they entered the Adrienne Street house.
 
 
 32
 The government argues that, even if the agents violated section 3109, exigent circumstances justified their noncompliance with the statute.[2] We disagree.
 
 
 33
 Exigent circumstances are defined as "those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 34
 The government argues that "Agent Poleszak was concerned about the safety of his search team and other occupants of the house." There is nothing in the record, however, to support this concern other than the fact that the agents' entry into the house occurred during a narcotics investigation. This concern, standing alone, does not establish an exigent circumstance which will excuse compliance with section 3109. See United States v. Becker, 23 F.3d 1537, 1541 (9th Cir.1994).
 
 
 35
 We conclude there were no exigent circumstances to justify the agents' failure to comply with section 3109. Therefore, we affirm the district court's suppression order as to Flores-Rivas.[3]
 
 IV
 
 36
 Because Zermeno and Silva-Sosa do not have standing to challenge the search of the Adrienne Street house, we reverse the district court's suppression order as to them.
 
 
 37
 We affirm the district court's suppression order as to Flores-Rivas. He has standing to challenge the search, and the agents violated the "knock and announce" requirement of 18 U.S.C. Sec. 3109 when they entered the Adrienne Street house.
 
 
 38
 We remand this case to the district court for further proceedings.
 
 
 39
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 The warrant did not describe with particularity the property to be seized. On the face of the warrant, in the space provided for a description of the property, there appeared only the notation "Evidence of a criminal offense in violation of USC 21." It was the government's position that the warrant's facial overbreadth was cured by the fact that Attachment A--which did specifically describe the property to be seized--was appended to the warrant, the magistrate judge relied on Attachment A when he issued the warrant, and the searching agents referred to the attachment during the search. The defendants argued, and the district court agreed, Attachment A was insufficient to cure the warrant's overbreadth because it was not incorporated by reference on the face of the warrant. As we have said, we do not reach the overbreadth issue in this appeal and we express no opinion about the district court's resolution of that issue
 
 
 [2]
 Exigent circumstances may excuse failure to make an announcement or to wait for the occupant to refuse entry. United States v. Mendonsa, 989 F.2d 366, 370 (9th Cir.1993). The existence of exigent circumstances is a mixed question of fact and law which we review de novo. Id
 
 
 [3]
 The government argues that, even if there were a violation of the "knock and announce" requirement in this case, suppression of the evidence discovered is not the proper remedy. As the government recognizes, however, we have consistently held that "[o]rdinarily, the remedy for a violation of section 3109 mirrors that of a violation of the Fourth Amendment: the suppression of evidence garnered after the illegal police entry." Ramos, 923 F.2d at 1355. The government urges that we reconsider this suppression policy. We decline to do so