**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Emmitt GRANVILLE, Defendant–**
**Appellant.**

**No. 98–10491.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1999.

Filed Aug. 28, 2000.

Arthur Pirelli, San Francisco, CA, for the appellant.

David Anderson and Robert T. Swanson, Assistant United States Attorneys, San Francisco, CA, for the appellee.

Before: HUG, Chief Judge, and FERGUSON and WARDLAW, Circuit Judges.

HUG, Chief Judge:

Appellant Emmitt Granville entered a conditional plea of guilty to attempted murder of officers of the United States, in violation of 18 U.S.C. § 1114, reserving for appeal the denial of his motion to suppress evidence obtained from a search of his residence. Granville argues that the district court erred in concluding that the search warrant for Granville's residence was supported by probable cause. He also contends that the law enforcement officers executing the warrant failed to comply with the requirements of the "knock and announce" statute, 18 U.S.C. § 3109, when they forcibly entered his residence. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the district court's denial of Granville's motion to suppress.

## I. BACKGROUND

In August 1994, federal, state, and local law enforcement agencies completed a lengthy investigation of an Oakland, California drug-trafficking organization headed by Emmanuel Lacy ("Lacy organization"). The investigation culminated with twelve members of the Lacy organization being indicted for conspiring to distribute narcotics and other related offenses. One of the individuals indicted was appellant Emmitt Granville.

At the conclusion of its investigation, the Government applied for warrants to search a number of residences and businesses. One of the residences for which a search warrant was sought was Granville's apartment at 1754 B Street in Hayward, California ("B Street apartment").[1] The government submitted in support of its search warrant application the affidavit of Special Agent Daniel Atchison. The affidavit included excerpts of twelve intercepted telephone conversations between Granville and Emmanuel Lacy as evidence of Granville's involvement with the Lacy organization.

The affidavit explained that members of the Lacy organization used a code combining English and foreign words when discussing narcotics transactions over the phone, making it difficult to determine exactly what was being discussed. However, the affidavit asserted that when taken in context it was clear that Granville and Lacy were discussing narcotics, money, possible shootings, and future meetings related to narcotic sales.

The search warrant affidavit also set forth evidence that Granville lived at the targeted B Street apartment. The affidavit stated that surveillance agents observed Granville place his belongings in a U-Haul truck and move from his previous residence to the B Street apartment. When he arrived, agents saw Granville gain access to the apartment with a key that was already in his possession. Agents subsequently observed Lacy entering and exiting the apartment on several occasions. The district court found that the combination of this physical surveillance evidence and the intercepted telephone calls provided probable cause to believe that Granville was a member of the Lacy organization, that he was involved in drug trafficking, and that he lived at the B Street apartment. On August 30, 1994, the court issued a warrant to search the B Street apartment.

The next day, August 31, 1994, the agents heading the Lacy investigation conducted a briefing at the Oakland Coliseum for the 300 to 400 law enforcement officers who were going to execute the arrest and search warrants that had been obtained as a result of the investigation. At this briefing, the officers learned that the Lacy organization was an on-going, large-scale narcotics trafficking organization with a history of violence. Following the general briefing, the team assigned to execute the search warrant at the B Street apartment ("Team 18") met to discuss the details of

1. The Government also applied for and received a search warrant for a second residence used by Granville, located at 5615 Hil-

ton Avenue, Oakland, California. Granville does not challenge the search of this residence.

their operation. The meeting was conducted by Team 18's tactical leader, Oakland Police Officer Julian Kalama. Kalama provided the group with a photograph of Granville, a diagram of his apartment, and a photocopy of his criminal record. Kalama informed the group that although Granville had no criminal history with firearms, it was probable that firearms would be found at the residence.

After the briefing, Team 18 proceeded to the B Street apartment. They arrived shortly before 7:00 AM. Officer Kalama first attempted to open the door with a pass key that he previously had obtained from the complex manager. When the pass key did not work, Officer Kalama knocked loudly with his fist three times and stated "Oakland Police Officer, search warrant, open the door." After waiting approximately five seconds without any response from the occupants of the apartment,[2] Officer Kalama forced open the front door. The door did not open completely because someone had placed a dining room chair against the interior door knob. As the officers entered the apartment, Granville emerged from his bedroom. Officer Kalama yelled "Oakland Police," and another officer yelled "FBI." Granville then fired shots at the officers, and the officers returned fire. Two officers were wounded during this exchange. After being subdued, Granville stated that he did not know the agents were "cops" and that he thought he was being robbed.

Following his arrest, on June 23, 1995, Granville was charged in a superceding indictment with conspiracy to distribute cocaine, other drug violations, and attempted murder of law enforcement agents assigned to perform federal law enforcement functions, in violation of 18 U.S.C. § 1114. Granville filed a motion to suppress evidence obtained from the search of his apartment. The district court denied Granville's motion, and Granville entered a conditional plea of guilty to the attempted murder counts. Granville now timely appeals the district court's denial of his motion to suppress.

## II. DISCUSSION

Granville contends that the search warrant for the B Street apartment was not supported by probable cause. Granville also contends that the officers violated the "knock and announce" statute, 18 U.S.C. § 3109, when they forcibly entered his apartment to execute the search warrant. The district court found that the search warrant was valid and that the officers complied with the requirements of § 3109. Because we find that the officers failed to comply with the requirements of 18 U.S.C. § 3109 and that any evidence obtained during the search must be suppressed, we need not address Granville's other claim that the search warrant was invalid.

■ We review de novo a district court's legal conclusion that the knock and announce statute was complied with. *See United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir.1995). Factual findings underlying the court's conclusion are reviewed for clear error. *See id.* at 1063. Whether exigent circumstances justified a failure to adhere to the knock and announce statute is a mixed question of fact and law that we review de novo. *See United States v. Hudson*, 100 F.3d 1409, 1417 (9th Cir.1996); *United States v. McConney*, 728 F.2d 1195, 1204–05 (9th Cir.1984) (en banc).

■ The knock and announce statute requires that an officer seeking to enter a house to execute a warrant must give notice of his purpose and authority, and he must be refused entry before forcibly entering the house. *See* 18 U.S.C. § 3109;

---

**2.** The officers involved in the raid provided various time estimates. Officer Kalama stated that he "waited five seconds" before kicking in the door. Another officer explained that it was difficult to establish a specific time frame, "but I do recall there were several seconds that passed before Officer Kalama attempted to kick the door open." A third officer declared that "Officer Kalama kicked the door approximately twenty seconds after the knock and announce."

*Hudson,* 100 F.3d at 1417. The statute codifies the common law rule of announcement, which the Supreme Court has held to be "an element of the reasonableness inquiry under the Fourth Amendment." *United States v. Ramirez,* 523 U.S. 65, 73, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (internal quotation omitted). Law enforcement officers may be excused from the knock and announce requirement only when they are faced with exigent circumstances that support "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

### A. Timing of Entry

It is undisputed that the officers of Team 18 knocked and announced their presence prior to entering Granville's apartment. The issue before us is whether the officers waited a sufficient length of time for Granville to respond before entering the apartment. In denying Granville's motion to suppress, the district court relied on Officer Kalama's estimate that the officers waited five seconds. Although other officers involved in the raid provided different estimates, the district court's reliance on Officer Kalama's estimate is not clearly erroneous. We therefore address the officers' compliance with § 3109 using the five-second time frame.

■ A refusal to comply with an officer's order to "open up" can be inferred from silence, but there must be a lapse of "a significant amount of time" before officers may forcibly enter the premises. *United States v. Mendonsa,* 989 F.2d 366, 370 (9th Cir.1993). Under the facts of this case, five seconds cannot be considered a "significant amount of time." The five seconds Officer Kalama waited before forcing his way into Granville's apartment simply did not provide Granville with a reasonable opportunity to ascertain who was at the door and to respond to Kalama's request

for admittance. This is especially apparent in light of the fact that the warrant was executed early in the morning when it was likely the occupants of the B Street apartment would be asleep.

Although there in no fixed minimum amount of time officers must wait before entering, *see United States v. Allende,* 486 F.2d 1351, 1353 (9th Cir.1973); *see also United States v. Goodson,* 165 F.3d 610, 614 (8th Cir.1999) (" 'The determination of whether an officer was justified in forcing entry after announcing his presence and purpose does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant.' " (citation omitted)), our case law has never authorized a forced entry after only five seconds. *See, e.g., Mendonsa,* 989 F.2d at 370 (finding a delay of three to five seconds inadequate); *see also United States v. Jones,* 133 F.3d 358, 361 (5th Cir.), *cert. denied,* 523 U.S. 1144, 118 S.Ct. 1854, 140 L.Ed.2d 1102 (1998) (surveying the case law in the federal circuits and noting generally that "a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109"). The shortest wait we have upheld is ten seconds. *See Allende,* 486 F.2d at 1353. Usually, the wait is much longer. *See, e.g., United States v. Ramos,* 923 F.2d 1346, 1355–56 (9th Cir. 1991) (finding a 45 second wait permissible); *United States v. Phelps,* 490 F.2d 644, 646–47 (9th Cir.1974) (deeming a ten to twenty second wait permissible).

The government has not offered any compelling reasons why we should depart from this precedent and find a five second wait acceptable in this case. The reasons for adhering to precedent and requiring officers to wait a reasonable amount of time before forcibly entering a person's home, however, are clear and persuasive. As we have repeatedly noted, a reasonable wait "protects *citizens and law enforcement officers* from violence; it protects individual privacy rights; and it protects against needless destruction of private

property." *United States v. Contreras–Ceballos,* 999 F.2d 432, 435 (9th Cir.1993) (emphasis added); *see also United States v. Little,* 753 F.2d 1420, 1435 (9th Cir. 1984). None of these interests-especially the goal of protecting police officers-are served by endorsing forcible entry after only five seconds. That point is vividly demonstrated in this case. Here, Granville and his girlfriend claim that they were sleeping when the officers broke down their door. Granville stated that he thought his apartment was being broken into and responded with gun fire.

B. *Exigent Circumstances*

■ The government argues that even if Team 18 failed to comply with the requirements of § 3109, the district court was correct to find that exigent circumstances justified an immediate entry into Granville's apartment. We cannot agree. The government fails to cite any specific facts, and we can find none in the record, that suggest Granville posed a threat to the officers. The government simply relies on generalizations and stereotypes that apply to all drug dealers. Our cases have made clear that generalized fears about how drug dealers usually act or the weapons that they usually keep is not enough to establish exigency. *See Zermeno,* 66 F.3d at 1063; *United States v. Becker,* 23 F.3d 1537, 1541 (9th Cir.1994); *see also Richards,* 520 U.S. at 394, 117 S.Ct. 1416 (rejecting a blanket exception to the knock and announce rule for searches in drug cases). We have explained that if generalized fears were enough, "the knock and announce statute would have been judicially amended to exclude virtually all narcotics-based cases. It has not been." *Becker,* 23 F.3d at 1541.

This principle is demonstrated clearly in *Becker.* In that case, the police executed a search warrant on the home of a suspected drug dealer without complying with the knock and announce statute. *See id.* at 1538. On appeal, the government claimed that exigent circumstances existed because a recent search of his associates' homes revealed that they possessed guns. *See id.*

at 1541. We rejected this argument, noting that information about how one drug dealer acts cannot create exigency for another suspected drug dealer. *See id.* Unless the police could point to "specific information that Becker *himself* was armed or dangerous," there could be no exigency. *Id.* (emphasis added). Similarly, in *Zermeno,* the government argued that exigent circumstances should excuse non-compliance with the statute since the lead agent "was concerned about the safety of his search team and other occupants of the house." *Id.* at 1063. Once again, we rejected the government's argument because there was "nothing in the record ... to support this concern other than the fact that the agents' entry into the house occurred during a narcotics investigation." *Id.*

The same problem exists in this case. The record does not contain any "specific information" that Granville himself was armed or dangerous. The district court's conclusion regarding exigency was based upon Officer Kalama's declaration. However, that declaration reveals that Officer Kalama did not have any specific information about Granville that would make him stand out from every other suspected drug dealer. In the declaration, Officer Kalama merely states that "[h]e was aware that Emmitt Granville was involved in narcotics dealings of large quantity and that he had formed an opinion that Granville maintained weapons." Nothing in the record supports Officer Kalama's opinion about the weapons. Granville was never seen with a weapon during the months of surveillance, and no one ever provided the police with information that Granville possessed guns. All we have are generalized fears that apply to all drug dealers. These generalizations are not sufficient to demonstrate exigent circumstances. *See Zermeno,* 66 F.3d at 1063; *Becker,* 23 F.3d at 1541; *Mendonsa,* 989 F.2d at 370–371.

## III. CONCLUSION

We conclude that the officers of Team 18 did not comply with the requirements of

18 U.S.C. § 3109 when they executed the search warrant for Granville's apartment and that their failure to comply was not justified by exigent circumstances. Consequently, any evidence acquired as a result of the search should have been suppressed. We therefore reverse the district court's denial of Granville's motion to suppress and remand for further proceedings.

REVERSED AND REMANDED.