**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RUSSELL GALLEGOS,

    Defendant - Appellant.

No. 02-4012

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:99-CR-49-01-W)**

---

Stephen R. McCaughey, Salt Lake City, Utah, for Defendant - Appellant.

Richard D. McKelvie, Assistant United States Attorney (Paul M. Warner, United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

---

Before **KELLY**, **BALDOCK**, and **HENRY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Russell Gallegos entered a conditional guilty plea to one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and one count of carrying or possessing a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). In so doing, Mr. Gallegos reserved his right to appeal the district court's order denying in part and granting in part his motion to suppress evidence obtained from a search of his residence, a safe deposit box, and two storage sheds. The magistrate judge to whom the case was referred recommended that the motion be granted as to evidence seized pursuant to the search of one storage shed, but denied as to all the other evidence seized. The district court overruled objections and adopted the magistrate judge's report and recommendation in its entirety.

On appeal, Mr. Gallegos argues that: (1) the search warrant for his residence was unsupported by probable cause; (2) the officers executing the warrant violated the "knock and announce" rule of 18 U.S.C. § 3109; (3) the officers exceeded the scope of the warrant by seizing items not identified therein; (4) the consent to search given by Mr. Gallegos' co-defendant was invalid because it was the product of coercion; and that (5) the fruits of the foregoing illegalities were not rendered admissible under the good faith exception to the exclusionary rule. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse.

## Background

On February 2, 1999, agents with the Federal Bureau of Investigation obtained a search warrant authorizing the search of Mr. Gallegos' home, which he shared with his young son and his codefendant, Sandra Rawlinson. The terms of the warrant provided that it could be executed at any time, day or night. Two days later, the agents met with several officers from the Drug Enforcement Agency and the Department of Public Safety to discuss the specifics of how the warrant should be executed. At this meeting the officers decided to execute the warrant on February 5, 1999 at 4:00 a.m. The officers also discussed the physical layout of the residence, which revealed that the bedrooms in the home were located on the second floor. The officers assigned the task of actually knocking on the front door were instructed to forcibly enter the residence if, in their estimation, an "adequate amount of time" had elapsed with no response from the occupants. II R. 25. No specific instructions were given as to what constituted an "adequate" amount of time.

The following morning, approximately 23 officers met at a remote location and drove to the target neighborhood, parking approximately one-half block from Mr. Gallegos' residence. The agent in charge of the operation testified that as he approached the residence he observed no lights on in the house and that it was

dark outside. II R. 28, 30-31.[1] At approximately 4:00 a.m. a member of the entry team began knocking loudly on the front door as the agent in charge yelled "police[,] FBI, search warrant." II R. 10, 11. The agent testified that after waiting approximately five to ten seconds, the entry team began attempting to breach the door with a battering ram. He further testified that as he yelled, he observed no response from within the residence.

After gaining access through the front door, the entry team split into two groups to secure the first and second floors of the residence. The officers assigned to secure the second floor encountered Mr. Gallegos exiting the northeast upstairs bedroom with a loaded nine-millimeter handgun, which he dropped at the direction of the officers. The officers thereafter secured the residence, and Mr. Gallegos and Ms. Rawlinson were taken into custody.

## Discussion

Mr. Gallegos claims that the law enforcement officers involved in the execution of the warrant ("the officers") violated the "knock and announce" rule of 18 U.S.C. § 3109. Specifically, Mr. Gallegos alleges that even if the officers properly announced their presence and purpose, he lacked sufficient time to either

---

[1] Another agent testified that he could not recall any lights being on in the residence before they executed the warrant. II R. 34.

- 4 -

grant or refuse entry to the officers. We hold that the officers failed to comply with the requirements of 18 U.S.C. § 3109, and that any evidence obtained during the ensuing search must therefore be suppressed. In light of this holding, we need not address Mr. Gallegos' alternative claims.

On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error, its conclusions of law de novo, and view the evidence in the light most favorable to the prevailing party. United States v. Maden, 64 F.3d 1505, 1508 (10th Cir. 1995). The Supreme Court has held that the "knock and announce" principle embodied in § 3109 "forms a part of the reasonableness inquiry under the Fourth Amendment." Wilson v. Arkansas, 514 U.S. 927, 929 (1995). Consequently, we review the district court's legal conclusion that the officers complied with § 3109 de novo, and the factual determinations underlying that conclusion for clear error. See United States v. Granville, 222 F.3d 1214, 1217 (9th Cir. 2000) (reviewing de novo the district court's "legal conclusion that the knock and announce statute was complied with."); United States v. Dice, 200 F.3d 978, 982 (6th Cir. 2000) (holding that "[t]his Court reviews de novo the district court's legal conclusion regarding the suppression of evidence for a knock-and-announce violation); cf. Maden, 64 F.3d at 1508 (holding that the question of whether exigent circumstances existed excusing compliance with § 3109 is reviewed de novo).

The "knock and announce" rule, codified at 18 U.S.C. § 3109, provides that a law enforcement officer may:

> break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, *if, after notice of his authority and purpose, he is refused admittance* or when necessary to liberate himself or a person aiding him in the execution of a warrant.

(emphasis added). Although the statute has existed in its current form only since the late 1940s, the origins of the rule it declares have been traced to the "earliest days" of our common-law history. Miller v. United States, 357 U.S. 301, 306-07 (1958) (tracing origins of the "knock and announce" rule to recorded 15th century precedent). Furthermore, in United States v. Ruminer, 786 F.2d 381, 383 (10th Cir. 1986), we observed that the purpose of § 3109 is to decrease the potential for violence, protect the privacy rights of individuals, and avoid the unnecessary destruction of property. In elaborating on these purposes, the Supreme Court has held that the privacy interests advanced by the rule include: (1) permitting individuals to comply with the law by peaceably permitting officers to enter their homes; (2) avoiding the unnecessary destruction of property that attends a forcible entry; and (3) providing an opportunity for occupants to "prepare themselves" for entry by law enforcement officers by, for example, "pull[ing] on clothes or get[ting] out of bed." Richards v. Wisconsin, 520 U.S. 385, 393 n.5 (1997).

The importance of the "knock and announce" rule is further evidenced by

its express incorporation into our modern-day Fourth Amendment doctrine, see Wilson, 514 U.S. at 934, and the significant consequences attending its violation: suppression of all evidence that is seized in a subsequent search as derivative evidence. See, e.g., Sabbath v. United States, 391 U.S. 585, 586 (1968); Ruminer, 786 F.2d at 383. Indeed, the Supreme Court has described § 3109 as codifying a rule that is "deeply rooted in our heritage and [that] should not be given grudging application." Miller, 357 U.S. at 313.

The starting point of our analysis must be the language of the statute. As noted above, § 3109 permits law enforcement officers to forcibly enter a residence, if after announcing their presence and purpose, the officers are refused entry. The first prong of the rule requires officers to announce their presence and purpose before breaking into an individual's home. Although Mr. Gallegos contends that there is at least a question as to whether the officers complied with this requirement, we hold that the district court's factual finding that the officers announced their presence and purpose before entering is not clearly erroneous. We also agree with the district court that no exigent circumstances attended the search of the Gallegos residence. The question, therefore, becomes whether an objectively reasonable officer would believe that he was refused admittance based on the facts and circumstances known to him at the time of entry.

It is by now well-established that an occupant of a home need not

affirmatively refuse admittance to trigger the right of the police to enter by force. United States v. Knapp, 1 F.3d 1026, 1030 (10th Cir. 1993). On the contrary, the refusal may be "constructive" or "reasonably inferred" from the circumstances. Id. (quoting United States v. Bonner, 874 F.2d 822, 824 (D.C. Cir. 1989)). In United States v. Moore, 91 F.3d 96 (10th Cir. 1996), we held that a constructive refusal occurs, giving police the right to enter by force, where "the occupants do not admit the officers within a reasonable period of time." Id. at 98 (citing Knapp, 1 F.3d at 1031).

At least where there are no exigent circumstances justifying a shorter interval, the central inquiry in conducting this determination is whether an objectively reasonable officer would believe that occupants of the residence had a reasonable opportunity to voluntarily admit the officer, thereby supporting a conclusion that the occupants refused admittance. See Granville, 222 F.3d at 1218 (holding that officers violated § 3109 because the delay did not provide defendant with "reasonable opportunity to ascertain who was at the door and to respond to [the officer's] request for admittance."); Richards, 520 U.S. at 393 (noting that one purpose of the "knock and announce" rule is to permit individuals an opportunity to comply with the law). Furthermore, it is clear that "the amount of time that officers must wait after knocking and announcing depends on the particular facts and circumstances of each case." United States v.

Jenkins, 175 F.3d, 1208, 1213 (10th Cir. 1999); cf. Richards, 520 U.S. at 394

(stating that "in each case, it is the duty of a court confronted with the question to

determine whether the facts and circumstances of the particular entry justified

dispensing with the knock-and-announce requirement."). "[A] bright-line rule for

determining how much time is enough is inappropriate." Jenkins, 175 F.3d at

1213.

We hold that under the circumstances known to the officers here—the time

of day that the warrant was executed, the absence of any indication of activity

within the house, and the known upstairs location of the bedroom—no objectively

reasonable officer would believe that Mr. Gallegos refused admittance within five

to ten seconds.

Significantly, even without considering these three factors, we note that the

five to ten second interval in this case pushes the limits of what we have held to

be reasonable in previous "knock and announce" cases. Significantly, our survey

of cases in this circuit has not revealed a single case upholding an interval of less

than ten seconds in the absence of exigent circumstances, and our review of cases

from other circuits has yielded similar results. See, e.g. Granville, 222 F.3d at

1218 (noting that the shortest wait the Ninth Circuit has upheld is ten seconds,

and that "[u]sually, the wait is much longer.").

Moreover, in Jenkins, we stated that an "across the board" ten-second

waiting period policy "clearly would violate the knock-and-announce standard"

because

> compliance with the knock-and-announce component of the Fourth
> Amendment reasonableness inquiry must be evaluated on a fact-
> dependent, case-by-case basis.  Without some additional evidence
> regarding, for example, the size of the house, the presence of guns,
> or other exigent circumstances, *officers frequently may be unable to
> justify a waiting period as short as ten seconds*.  In light of these
> considerations, a policy requiring officers to wait ten seconds in
> every case would not comport with existing Supreme Court and
> circuit precedent.

Jenkins, 175 F.3d at 1214 (emphasis added).  The import of our comments in

Jenkins is clear. Although a ten-second delay can, under some circumstances,

satisfy the demands of § 3109, the consideration of relevant additional factors

may very well compel a contrary holding.

The first such factor we address in determining whether the delay here was

reasonable under § 3109 is the time of day that the warrant was executed.  We

have held that when a warrant is executed in the middle of the day, "the amount

of time the officers need to wait before entering is generally reduced." Jenkins,

175 F.3d at 1215.  If the warrant in this case was executed at a time when "most

people are awake and engaged in everyday activities," Id. (quoting United States

v. Spikes, 158 F.3d 927 (6th Cir. 1998)), this would be a very different case.

Here, the officers executed the warrant at 4:00 a.m.  Absent indications of

activity in the home at that hour, a mere five to ten second wait will rarely if ever

provide a sufficient amount of time. See generally, Jenkins, 175 F.3d at 1214-15 (expressing grave concerns about alleged ten-second police department policy, given the testimony of two experienced officers indicating that occupants very rarely reach the door before the officers break it down). There were no such indications here–it was dark outside and there were no lights on in the house. Furthermore, our review of the record has revealed no evidence suggesting that the officers had any specific indication that any of the home's occupants may have been up and about at that time. The evidence overwhelmingly supports the conclusion that Mr. Gallegos was asleep when the officers announced their presence.[2] No objectively reasonable officer would expect most individuals to arise, get dressed, proceed to the front door, and admit the officers within such a short time frame. See Granville, 222 F.3d at 1218 (9th Cir. 2000) (holding that a five-second delay was insufficient to satisfy § 3109, where the warrant was "executed early in the morning when it was likely the occupants of the [apartment] would be asleep.").

Moreover, the physical characteristics of the Gallegos residence are

---

[2]     We note that even if Mr. Gallegos was not in fact asleep at the time that the warrant was executed, such would make little difference in our resolution of this case. In assessing the reasonableness of the waiting period preceding a forcible entry, what matters is the information known to the officers immediately prior to the entry, and the reasonable inferences to be drawn therefrom, not what turned out to be the case after the fact.

relevant to our determination. As previously noted, the officers were aware that the bedrooms in the Gallegos residence were located on the second floor. Factors such as the early hour and lack of illuminated lights in the house justify an inference that Mr. Gallegos was in his bedroom at the time the warrant was executed. Obviously, where there is reason to believe that the occupants of a home are in an upstairs bedroom, the length of time needed to reach the front door will generally be longer than if the occupants are present, for example, in a room on the ground floor adjacent to the front door. The fact that the bedrooms of the residence were located on the second floor, when viewed together with the factors discussed above, demonstrates the unreasonableness of construing a five to ten second delay as a refusal to admit the officers.

In light of the foregoing, we simply cannot conclude an objectively reasonable officer would believe that Mr. Gallegos "refused admittance" under § 3109, thereby justifying the forced entry in this action. However, the government argues that our prior cases establish the reasonableness of the interval here, and that the "useless gesture" exception to the "knock and announce" rule applies on the facts of this case. We disagree.

The government relies heavily on United States v. Knapp, 1 F.3d 1026 (10th Cir. 1993). In Knapp, officers executing a search warrant waited "ten to twelve seconds" after knocking and announcing their presence before breaking

down Mr. Knapp's door. Id. at 1030. The undisputed evidence in that case revealed that the officers were aware that Mr. Knapp was an amputee who utilized a wooden prosthesis, id. at 1030, n.1, that they believed no exigent circumstances attended the search of his residence, id. at 1030, and that they observed lights on in his home and therefore suspected that he was there at the time. Id. On appeal, we affirmed the district court's denial of Mr. Knapp's motion to suppress, holding that:

> Under the facts of this case, we hold the district court's determination that the agents waited a reasonable period of time was not clearly erroneous. Mr. Knapp gave no indication that he intended to voluntarily permit the officers to enter the residence. It was plausible for the officers to conclude that they were affirmatively refused entry after a ten to twelve second interval without a verbal or physical response. We therefore hold that the district court's denial of the motion to suppress . . . was not clearly erroneous.

Id. at 1031.

The government contends that if the ten to twelve second delay in Knapp was reasonable, the same conclusion must obtain here in light of the "nearly identical" time lapse, and the fact that, unlike Mr. Gallegos, Mr. Knapp had a known physical impairment that affected his mobility. Aplee. Br. at 11-12. However, after a careful comparison of these cases, we are satisfied that Knapp does not control the disposition of this case.

First, we note that the usefulness of our decision in Knapp is limited in light of the fact that the court there reviewed for clear error the district court's

- 13 -

finding that the officers waited a reasonable amount of time before forcibly entering Mr. Knapp's home.  Knapp, 1 F.3d at 1031.  Although the determination of which standard of review applies in this context may have been a closer question at the time of our decision in Knapp, we believe that at least since the Supreme Court's opinion in Wilson v. Arkansas, it is clear that the de novo standard of review constitutes the proper standard for evaluating the reasonableness of the interval preceding a forced entry under § 3109.

In Wilson, decided nearly two years after Knapp, the Supreme Court held for the first time that the "'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment."  Wilson, 514 U.S. at 929.  Moreover, it is beyond dispute that the determination of whether a search is "reasonable" under the Fourth Amendment is a question of law we review de novo.  See, e.g., Jenkins,175 F.3d at 1212.  Because the propriety of a forcible entry in this context depends on whether the time period preceding the entry was "reasonable," and because such a determination forms a part of the reasonableness inquiry under the Fourth Amendment, we believe that the de novo standard of review constitutes the proper standard in this context.[3]

_____

[3]     Obviously, the decision of whether the de novo or clearly erroneous standard applies can have a substantial impact on the resolution of a particular case given the "significant" differences between the two standards.  See Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988); see also Concrete Pipe and Prods. of Cal., Inc.  v. Constr. Laborers Pension Trust, 508

- 14 -

Moreover, even if the standard of review in <u>Knapp</u> was not in question, <u>Knapp</u> would not control. <u>Knapp</u> does not indicate the time of day that the warrant was executed, the physical layout of the residence, or the defendant's probable location within the residence. Moreover, unlike in the current action, interior lights were on in <u>Knapp</u> suggesting the possibility that the defendant was awake and present in the home, and could have at least verbally responded to the officers within the ten to twelve second interval preceding their entry.

The government also argues that because Mr. Gallegos had armed himself by the time the officers had ascended the stairs, Mr. Gallegos had no intention of granting entry to the officers. Relying on <u>United States v. McGee</u>, 280 F.3d 803 (7th Cir. 2002), the government argues that a wait longer than five to ten seconds would have been a "useless gesture." In <u>McGee</u>, officers stationed at the rear of the target residence observed the defendant exit through the back door just after the officers at the front door announced their presence. <u>Id.</u> at 805. After a ten-second wait, the officers at the front door forcibly entered the home. <u>Id.</u> The defendant argued that the evidence obtained should have been suppressed on the ground that the duration of the interval preceding the entry was unreasonably

U.S. 602, 623 (1993) (describing the clearly erroneous standard as "significantly deferential."); <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 231 (1991) (holding that "no form of appellate deference is acceptable" under the de novo standard.).

short.  Id.  On appeal, the court held that a further wait would have been a "useless gesture" in light of the defendant's unavailability to answer the door, and that any "precipitous entry" was therefore harmless.  Id. at 807.

The government contends that the rationale of McGee is applicable here. We disagree.  We would be more inclined towards the result in McGee had the officers actually observed Mr. Gallegos arm himself prior to their entry,[4] or if they had witnessed him flee the home after announcing their presence at his front door.  See, e.g., Ruminer, 786 F.2d at 384 (holding that officers did not violate § 3109 where officers stationed at defendant's bedroom window observed figure fleeing the room upon announcement of officers at front door).  These obvious and critical distinctions persuade us that McGee is not applicable.  Here, the officers had absolutely no indication, prior to entering the residence, that Mr. Gallegos did not intend to voluntarily admit the officers.  It is axiomatic that information acquired after an unreasonable search or seizure should not influence either the scope of a suspect's Fourth Amendment rights or the determination into whether those rights were violated.  See Byars v. United States, 273 U.S. 28, 29 (1927) ("A search prosecuted in violation of the Constitution is not made

_____

[4]        We do not agree that such an observation would constitute conclusive proof that Mr. Gallegos intended to refuse admittance.  However, if the officers had in fact observed him arm himself prior to their entry, we could not say that such an inference would be unreasonable.

- 16 -

lawful by what it brings to light . . . ."); United States v. Di Re, 332 U.S. 581, 595 (1948) ("[A] search is not to be made legal by what it turns up.").

Accordingly, facts discovered subsequent to the forcible entry cannot justify an unreasonably short waiting period on the grounds that to wait longer would have been useless. See United States v. Lucht, 18 F.3d 541, 551 (8th Cir. 1994) (holding that in evaluating whether exigent circumstances justified a three to five second delay before entering the defendant's residence, "facts that became known only after entry, i.e., that the inhabitants were awake, cannot justify the decision to force entry."). Consequently, we hold that the fact that Mr. Gallegos had armed himself, a fact which the officers discovered only after they had entered his home, does not justify the application of the "useless gesture" doctrine in the instant action.

REVERSED and REMANDED.