**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

SEP 13 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 17-10071 |
| Plaintiff-Appellee, | D.C. No. 5:15-cr-00288-BLF-1 |
| v. | |
| JAVIER GARCIA, | MEMORANDUM* |
| Defendant-Appellant. | |
| UNITED STATES OF AMERICA, | No. 17-10072 |
| Plaintiff-Appellee, | D.C. No. 5:10-cr-00301-BLF-4 |
| v. | |
| JAVIER GARCIA, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted May 14, 2018
San Francisco, California

Before: WALLACE and N.R. SMITH, Circuit Judges, and BATTS,** District

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Judge.

Defendant Javier Garcia appeals from the district court's order denying his motion to suppress evidence recovered from his residence and post-arrest statements he made to police. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

Defendant's motion to suppress challenged officers' warrantless entry into his residence, which occurred after a man named Nevarez, who was fleeing from police, ran into the residence. Police observed Nevarez holding his waistband while he ran and feared that he might be armed. Police did not enter the residence immediately after Nevarez but, instead, stood guard in front and back of the building. Nevarez was arrested a few minutes later in a neighbor's yard after exiting the residence through a bathroom window. Nevarez's arrest preceded the officers' entry.

Between the time of Nevarez's and the officers' entry into the building, two individuals emerged from the area of the unit: a young boy and a woman who, according to the officer stationed in front, appeared shaken and frightened. The officer asked the young boy who had run into the house, and the boy said, "Poncho." When the officer asked for the runner's real name, the boy repeated,

** The Honorable Deborah A. Batts, United States District Judge for the Southern District of New York, sitting by designation.

2

"Poncho." The officer did not recall whether he had asked the woman if anyone else remained in the house.

The officers entered the house and encountered Defendant. After learning that Defendant was on supervised release with a search condition, they performed a full search of the residence. The officers found methamphetamine during this search and arrested Defendant.

Following an evidentiary hearing, the district court found that the initial warrantless entry was lawful under both the emergency aid and protective sweep exceptions to the warrant requirement. On February 7, 2017, Defendant was convicted on stipulated facts at a bench trial of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c), as well as violation of his supervised release.

We review *de novo* the district court's denial of a motion to suppress evidence, and review underlying factual findings for clear error. *United States v. Ewing*, 638 F.3d 1226, 1229 (9th Cir. 2011).

*1. Emergency Exception*

The emergency exception allows officers to enter a home without a warrant where "(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and

3

manner were reasonable to meet the need."[1] *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008). The emergency exception is "narrow" and its boundaries "rigorously guarded." *Bonivert v. City of Clarkston*, 883 F.3d 865, 877 (9th Cir. 2018) (quoting *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005)).

The officers here lacked an objectively reasonable basis to believe that there was someone inside of the residence in need of immediate assistance. The Government's arguments regarding what the officers did not know—including Nevarez's connection to the apartment, whether he was armed, and what he planned to do inside—cannot justify entry, as lack of information is the opposite of articulable facts.[2] *See Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1164 (9th Cir. 2014). And what the officers *did* know—that it was a high-crime area and that individuals attempting to avoid arrest can sometimes be dangerous—consisted in large part of the type of generalizations that cannot form the basis of a

---

[1] The dissent purports to apply this same standard, but it does not. The dissent concludes that the "officers had reasonable grounds to believe someone inside Garcia's residence *may have needed* immediate assistance." (emphasis added). However, the mere possibility of an emergency is not enough; a search under the emergency aid exception is lawful only if it was reasonable to believe that an emergency *actually* existed. *See Snipe*, 515 F.3d at 952 (holding that there must be "an objectively reasonable basis for concluding that *there was* an immediate need to protect others or [the officers] from serious harm" (emphasis added)).The difference is perhaps subtle, but it is determinative.

[2] Moreover, at the point that the young boy identified the runner as "Poncho"—not once, but twice—it was less reasonable for officers to believe that Nevarez had no connection to the residence.

4

particularized belief. *See United States v. Granville*, 222 F.3d 1214, 1219 (9th Cir. 2000); *United States v. Becker*, 23 F.3d 1537, 1541 (9th Cir. 1994); *cf. United States v. Bynum*, 362 F.3d 574, 580–81 (9th Cir. 2004).

With respect to the fear that Nevarez was armed, grabbing one's waistband when one begins to run—a gesture also common when the individual is wearing baggy pants[3]—is much less suggestive of actual gun possession than the facts confronting officers in cases where we have upheld the emergency exception in part on this basis. *See United States v. Black*, 482 F.3d 1035, 1039 (9th Cir. 2007) (defendant's ex-girlfriend called police, identified herself, and told them that defendant had a gun). Further, even if the officers had seen a gun, Nevarez took no actions indicating that he was a danger to others or that he intended to use it. *See United States v. Nora*, 765 F.3d 1049, 1054–55 (9th Cir. 2014).

More significantly, any potential danger associated with Nevarez's presence inside the house dissipated when Nevarez was taken into custody outside of the house, prior to the officers' entry. *See United States v. Gooch*, 6 F.3d 673, 680 (9th Cir. 1993); *cf. United States v. Reyes-Bosque*, 596 F.3d 1017, 1030 (9th Cir. 2010).

---

[3] The dissent, trying to "muster up" any evidence it can to suggest that grabbing the waistband reasonably suggests that this meant that Nevarez was grabbing a gun, criticizes us for making a factual finding not supported by the record. The dissent is incorrect; we make this observation – not factual finding – only to illustrate that alternative inferences can be drawn from these facts and to show that the dissent's suggestion, that Nevarez grabbed his waistband because he possessed a gun, is little more than a guess.

Indeed, it is unclear what emergency the officers could have envisioned, where—unlike the cases cited by the Government, *see Snipe*, 515 F.3d 947; *Black*, 482 F.3d 1035—they received no call requesting emergency assistance, and where the only person arousing their suspicions was arrested outside of the residence prior to their entry.

The possibility that Nevarez might have had a gun that he left inside the house prior to his arrest is not only speculative, but, even if true, not *ipso facto* sufficient to create an emergency. *See Gooch*, 6 F.3d at 680 ("The presence of a firearm alone is not an exigent circumstance."). Nor is it remarkable that a woman might appear frightened while exiting an apartment at which the police are pointing a gun. The fact that the police had no reason to believe that anybody remained inside the residence—much less somebody violent or injured—undercuts a finding of emergency. *See United States v. Reid*, 226 F.3d 1020, 1028 (9th Cir. 2000).

"'[I]f police officers otherwise lack reasonable grounds to believe there is an emergency,' they must 'take additional steps to determine whether there is an emergency that justifies entry in the first place.'" *Hopkins v. Bonvicino*, 573 F.3d 752, 765 (9th Cir. 2009) (alterations omitted) (quoting *United States v. Russell*, 436 F.3d 1086, 1092 (9th Cir. 2006)). While the officers here asked the young boy to identify Nevarez, they never asked anybody whether there were individuals

6

inside requiring immediate assistance, in part, apparently, because they assumed that the residents might lie. Such an "inflexible assumption" cannot serve as a substitute for reasonable grounds. *Bonivert*, 883 F.3d at 878. Having failed to take additional steps to determine whether there was an emergency at hand—and without any other facts reasonably suggesting as much—the officers' entry was not justified under the emergency aid exception.

### 2. *Protective Sweep*

A protective sweep is justified where police identify "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[] the officer in believing that the area swept harbor[s] an individual posing a danger to the officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990) (internal quotation marks and citation omitted).[4]

Here, the Government relies on the following facts to support the exception: (1) a possibly armed individual had run into the unit, (2) a frightened woman had come out, (3) both officers and bystanders could potentially be in the line of fire, and (4) suspects fleeing police sometimes run to join dangerous accomplices.

---

[4] Fear for officer safety, the claimed basis for the protective sweep here, has sometimes been characterized as falling under the exigency or emergency exceptions. *See Sandoval*, 756 F.3d at 1164–65. For the purposes of this decision, we need not decide which exception to the warrant requirement properly upholds entry based on this fear.

The final two facts are not specific and articulable, but speculative and generalized. *See Granville*, 222 F.3d at 1219. With respect to the remaining facts, as discussed above, these are not sufficient to support a reasonable suspicion that *any* person remained in the unit, much less a person posing danger to the officers. *See Sialoi v. City of San Diego*, 823 F.3d 1223, 1237–38 (9th Cir. 2016); *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1298 (9th Cir. 1988). Nor is this a case where officers had reason to believe that dangerous individuals associated with the detained suspect remained inside of the house. *See United States v. Hoyos*, 892 F.2d 1387, 1395–97 (9th Cir. 1989), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001); *see also id.* at 1396 n.8.

Because there are no facts supporting a reasonable belief that there were individuals inside the house who threatened the officers' safety, the protective sweep exception does not apply.

### 3. *Defendant's Arrest*

Defendant argues that his arrest occurred inside the home without a warrant or probable cause, in violation of *Payton v. New York*, 445 U.S. 573 (1980). Because we find that the officers' entry into the residence was unlawful, this issue is moot, and we do not address it.

### 4. *Exclusionary Rule*

8

The district court found that no Fourth Amendment violation occurred, and as such, did not consider whether the exclusionary rule applied to the seized evidence or to Defendant's post-arrest statements. *See United States v. Sedaghaty*, 728 F.3d 885, 915 (9th Cir. 2013). In light of the general rule "that a federal appellate court does not consider an issue not passed upon below," remand is appropriate to allow the district court to consider whether the exclusionary rule applies in this case in the first instance. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

**REVERSED AND REMANDED.**

*United States v. Garcia*, No. 17-10071+

WALLACE, Circuit Judge, dissenting:

I respectfully dissent. In my view, the record supports the district court's conclusion that officers had an objectively reasonable basis for entering Garcia's residence under the emergency aid exception. I would affirm Garcia's conviction.

I.

The emergency aid exception permits law enforcement officers to enter and search a home without a warrant when two conditions are satisfied: "(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008). In determining whether law enforcement satisfied these conditions, "[w]e assess officers' actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)). As the Supreme Court has repeatedly emphasized, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense,

1

uncertain, and rapidly evolving." *Ryburn*, 565 U.S. at 477 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

In this case, although the record did not conclusively establish the existence of an emergency situation, it did demonstrate that officers had reasonable grounds to believe someone inside Garcia's residence may have needed immediate assistance. When Nevarez initially fled from police, he grabbed his waistband, reasonably suggesting to the pursuing officer that he had a gun. The majority claims that this gesture is "also common when the individual is wearing baggy pants," but Officer Lopez did not testify that the suspect was holding up baggy pants, nor did any other witness. Only the majority has made this "factual" finding.

After Nevarez ran into Garcia's unit, a frightened woman came out of the unit minutes later, "shaking, like something really horrible had happened to her," according to Lopez's *credited* testimony. This took place in a neighborhood that the officers knew from experience had a high incidence of violent crime. Under these circumstances—a potentially armed suspect running through a residence in a high-crime neighborhood in combination with a visibly frightened woman emerging from the residence minutes later—officers had an objectively reasonable basis for believing that someone inside the residence might well need emergency assistance. The record was sufficient to conclude that the officers' warrantless entry was justified under the emergency aid exception. *See Michigan v. Fisher*, 558

2

U.S. 45, 49 (2009) (explaining that "[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception").

The majority attempts to undermine the urgency of the situation facing the officers by disaggregating the record and attacking the officers' justifications individually. But the relevant inquiry requires us to consider the "*totality* of the circumstances," not analyze each rationale in a vacuum. This holistic consideration makes sense given that the circumstances with which officers are confronted may take on different meanings depending on the presence or absence of other factors. *See Ryburn*, 565 U.S. at 476–77 ("[I]t is a matter of common sense that a combination of events each of which is mundane when viewed in isolation may paint an alarming picture."). For example, the inferences that officers may reasonably draw when a potentially armed suspect runs through a residence in a neighborhood known for violent crime is much different than the reasonable inferences that can be drawn when officers have no knowledge about the neighborhood, or know the neighborhood is not particularly violent. In my view, the majority's piecemeal attack on the officers' justifications fails to recognize the importance of, and our obligation to, consider the circumstances in the aggregate.

My colleagues also emphasize alternative interpretations of the circumstances facing the officers, suggesting that the officers did not adopt the most reasonable inferences from the situation confronting them. For example, my

3

colleagues explain that once Nevarez was taken into custody outside of the house, there was much less reason to believe there was any potential danger inside the house. I do not deny that the majority's interpretations may be fair ones. But acknowledging that the majority may have reasonably reached a different conclusion than the officers on the scene does not render unreasonable the officers' belief that someone inside the house may have needed immediate assistance. Even if the totality of the circumstances in this case could be interpreted multiple ways, I would conclude that the officers' assessment satisfied the requisite threshold level of reasonableness. *See Ryburn*, 565 U.S. at 477.

## II.

Finally, I think it important to point out that this case is likely one in which the attenuation doctrine will play an important role on remand. Even if the officers' entry into Garcia's residence was unlawful, they did not discover the evidence used to convict him until *after* learning of Garcia's search condition. There is a real possibility that Garcia's search condition was an intervening circumstance sufficient to break "the causal relationship between the unconstitutional act and the discovery of the evidence." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). The majority correctly concludes that the district court should consider the question of attenuation in the first instance. I write only to highlight the centrality of the attenuation doctrine to this case.

4

## III.

I acknowledge that the officers' belief that someone inside Garcia's residence needed immediate aid turned out to be wrong. But reasonableness in this context is not based upon the accuracy of the officers' belief in retrospect, but rather on whether the circumstances confronting the officers provided an objectively reasonable basis for entering the home without a warrant. *See Sandoval*, 756 F.3d at 1163. Here, I believe that standard was satisfied. Therefore, I respectfully dissent.